# FIRST NATIONAL BANK OF DEADWOOD, SOUTH DAKOTA, Appellant, v. ROCKEFELLER et al.

### Division Two, March 29, 1906.

1. **CORPORATION: Certificate: Articles Not Signed.** The certificate of incorporation issued by the Secretary of State to a corporation is a final determination of its right to do business, and thereafter no one except the State, by a direct proceeding, can question its corporate existence. The fact that its articles of incorporation were not signed by some of the incorporators named therein does not authorize the courts, in a suit brought by a private citizen on its notes, to declare it to have no legal existence as a corporation.

Bank v. Rockefeller.

2. ——: ——: —— **Partnership.** Nor can the court, in a suit by a private person against the incorporators, hold that the company, to whom the Secretary of State had issued a certificate of incorporation, was a partnership, composed of the incorporators as partners, although the articles of incorporation were not signed by the incorporators.

3. ——: ——: ——: **Failure to Pay Stock: Fraud.** The failure of a part of the incorporators to sign the articles of association and the failure of all of them to pay into the company's treasury a part or all the money due on the stock issued to them, does not have the effect, in a collateral suit against the company, by private persons, to nullify the certificate of the Secretary of State granting to the company the right or franchise to be a corporation. Under section 1314, Revised Statutes 1899, when the certificate is issued it becomes a *de facto* body, and remains such until dissolved in an appropriate proceeding brought by the State.

4. ——: ——: **Fraud: Partnership.** The fact that the Secretary of State, at the time he issued the certificate of incorporation to a company, was not informed that its articles of association had not been signed by some of the incorporators and that the capital stock had not then been paid and that the incorporators had agreed among themselves that it was not to be paid, does not authorize the court, in a suit by its creditors, to decree that the obtaining of the certificate was fraudulent, null and void, or to hold the incorporators liable as copartners.

5. ——: ——: ——: **Fictitious Capitalization.** Both the Constitution and statute in making void any fictitious increase of the stock or indebtedness of a corporation, assume the existence of a corporation.

6. ——: ——: **Unpaid Subscription.** The statute and equity afford a means by which, at the suit of a creditor of the corporation, the stockholders may be compelled to pay for the stock in the manner recited in the articles of association— that is, each is liable for the amount unpaid by him on his subscription, but neither is liable for the amount unpaid by any other subscriber.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*Botsford, Deatherage & Young* and *Johnson & Lucas* for appellant.

(1) The framers of the Missouri Constitution of 1875, by its prohibition of "fictitious" stock, and the Missouri Revising Session of 1879, charged with the enforcement of that Constitution, by the introduction into our corporation laws of the terms "bona-fide" subscription of stock, and "actually" paid, intended to put an end to "wild-cat" corporations in this State. Const. of 1875, art. 12, sec. 8; R. S. 1879, secs. 727-926; Van Cleve v. Berkey, 143 Mo. 109. (2) The bona-fide subscription and payment of the stock, as set forth in the articles of incorporation, are conditions precedent to the creation of a corporation, without the performance of which conditions precedent, the corporation is not created. 6 Am. and Eng. Ency. Law (2 Ed.), 504-506; Van Horn v. Dowance, 2 Del. 317; Brannon v. Messick, 10 Cal. 108; Shockley v. Parvis, 4 Houst. (Del.) 569; Nevins v. Gomley, 95 Ill. 213; Martin v. Ballew, 13 Bush. 132; Thomas v. Eckert, 88 Ill. 593; Page v. Frazier, 14 Bush. 208; 1 Thompson on Corporations, secs. 53, 220, 221, 224, 225, 226, 227; 3 Thompson on Corporations, secs. 2975, 2978; 7 Thompson on Corporations, secs. 8210, 8211, 8213. The decision of the United States Supreme Court, May, 1905, in Wells Company v. Gastonia Company, 198 U. S. 186, is precisely in point. (3) The rule against collateral inquiry as to the existence of corporations grew up when corporations were created without conditions precedent by the direct fiat of the State by legislative charters, and that rule was applied during that period when the continued existence of a corporation, lawfully created, was questioned because of the non-performance of conditions subsequent, such as non-user and the like. That rule does not apply to our present system of general corporation laws under which corporations

are created by the incorporators on the performance by them of the required conditions precedent. In cases where the corporation, by reason of the non-performance of conditions precedent, is not created, there is no corporation in existence which can be sued by quo warranto or other form of action, and in such case the only party or parties against whom the contention of no corporation can be made are the incorporators who, in this case, are the defendants in this action. State ex rel. v. Gravel Road Co., 37 Mo. App. 503; State ex rel. v. Fleming, 147 Mo. 8. (4) Section 1282, Revised Statutes 1899, which provides that no certificate of incorporation of a bank shall be valid unless the stock is first bona fide subscribed and one-half paid, is simply in affirmance of the common law under which the same rule exists as to corporations generally. Globe Pub. Co. v. Bank, 41 Neb. 189; Sovenir v. McLaughlin, 161 Ill. 432; Wechelberg v. Bank, 64 Fed. 90, 12 C. C. A. 56; 10 Ency. Law and Proc., 227. (5) Parties who deal with agents as such are not precluded or estopped from afterwards suing those agents on the ground that in point of fact they had no principals. So, parties who deal with persons as composing a corporation are not precluded or estopped from afterwards suing such persons if in point of fact there was no corporation. Doyle v. Mizner, 42 Mich. 336; Sovenir v. McLaughlin, 161 Ill. 435; Cunderson v. Bank, 199 Ill. 434; Glenn v. Bergmann, 20 Mo. App. 343; Empire Mills v. Grocery Co., 15 S. W. 505. There is nothing in this record showing that plaintiff dealt with the Siegel-Sanders Company definitely as a corporation. (6) The articles of association of the incorporation and certificate of the Secretary of State are only prima facie evidence of the creation of a corporation. R. S. 1889, sec. 1314; State ex rel. v. Cook, 174 Mo. 100; State ex rel. v. Talbert, 123 Mo. 69; Sovenir v. McLaughlin, 161 Ill. 432; Gundison v. Bank, 199 Ill. 433. (7) Section 1313, Revised Statutes 1899, requires all the incorporators to ac-

knowledge the articles of incorporation, and the admitted failure of two of these defendants to perform this condition precedent prevented in itself the Siegel-Sanders Commission Company from becoming a corporation.   (8)   The following is a list of our authorities which are cited here as supporting generally the propositions of this brief:  Thompson on Corp., secs. 225-226-308; Mor. on Private Corp., secs. 27-28-41-737; Childs v. Smith, 55 Barb. 45; Ins. Co. v. Crane, 42 N. H. 636; Utley v. Union Tool Co., 11 Gray 139; McIntire v. Ditching Assn., 40 Ind. 104; Furnace & Co. v. Herkimer, 46 Ind. 142; State ex rel. v. Beck, 81 Ind. 500; Childs v. Hurd, 32 W. Va. 98; Bates v. Wilson, 14 Colo. 156; Jones v. Hdw. Co., 21 Colo. 267; Kaiser v. Bank, 56 Ia. 104; Humphrey v. Mooney, 1 Colo. 493; Mining Co. v. Woodbury, 14 Cal. 424; Harris v. McGregor, 29 Cal. 125; Bigelow v. Gregory, 73 Ill. 197; Field & Co. v. Crooks, 16 La. Ann. 153; Coleman v. Coleman, 78 Ind. 344; Abbott v. Smelting Co., 4 Neb. 416; Trust Co. v. Floyd, 47 Ohio St. 525; Bergeron v. Hobbs, 96 Wis. 641; Walton v. Oliver, 49 Kan. 107; Whetstone v. Mfg. Co., 1 Kan. App. 320; Slocum v. Head, 105 Wis. 431; Montgomery v. Forbes, 148 Mass. 249; Gen. Laws of N. H. (1878), chap. 152; Hurt v. Salisbury, 55 Mo. 310; Richardson v. Pitts, 71 Mo. 128; Martin v. Fewell, 79 Mo. 401; Granby Mining Co. v. Richards, 95 Mo. 106; Cleaton v. Emery, 49 Mo. App. 345; R. S. 1899, sec. 1312; Davidson v. Hobson, 59 Mo. App. 130; Durant v. Abendroth, 69 N. Y. 148; Smith v. Warden, 86 Mo. 399; Furniture Co. v. Crawford, 127 Mo. 364; Furniture Co. v. Bodwell, 73 Mo. App. 392; Glenn v. Bergmann, 20 Mo. App. 343; Hill v. Beach, 1 Beazly (N. J.) 35; Duke v. Taylor, 37 Fla. 64; Coleman v. Coleman, 78 Ind. 344; Trust Co. v. Floyd, 47 Ohio St. 525; 1 Beach on Priv. Corp. (1 Ed.), 26; 1 Thomp. on Corp., sec. 266.

*C. O. Tichenor* for respondents.

(1) Defendants are sued as partners. It stands admitted that they did not intend to become, or act as partners by signing the articles of agreement; on the contrary, they intended to become a corporation; there was, in so far as defendants are concerned, no community of interest in the property of the corporation, in fact, defendants never have been in a position to assert any partnership. Hughes v. Ewing, 162 Mo. 295. Under such circumstances there ought to be no intendments in favor of plaintiffs in their claim. (2) The Siegel-Sanders Live Stock Commission Company was a corporation. There were no irregularities in its incorporation. Everything was regular and perfect from the very beginning, step by step, down to and including the certificate of incorporation. It was clothed with all the forms of a corporation under the laws of this State; it was in the exercise and use of the franchise conferred upon the incorporators. To say that they are to be regarded as a voluntary, unincorporated association, is not only contrary to reason, but also to the great weight of authority. The debt was not created by defendants individually, but by a corporation acting under a perfect charter, and in the exercise of its charter powers. Stout v. Zulich, 48 N. J. L. 599; Vanneman v. Young, 52 N. J. L. 403; American S. Co. v. Heidenheimer, 80 Tex. 344; Snider's Sons v. Troy, 91 Ala. 224; Gow v. Lumber Co., 109 Mich. 45; Larned v. Beal, 65 N. H. 184; Johnson v. Okerstrom, 70 Minn. 309; Cochran v. Arnold, 58 Pa. 399; Gibbs' Estate, 157 Pa. 73; Slocum v. Head, 105 Wis. 431; Coal Co. v. Maxwell, 22 Fed. 197; Trowbridge v. Scudder, 11 Cush. 83; Ward v. Brigham, 127 Mass. 24; Humphreys v. Moony, 5 Colo. 282; Bank v. Palmer, 47 Conn. 443; P. & M. B. K. v. Padgett, 69 Va. 159; Blanchard v. Kaul, 44 Cal. 440; Powder Co. v. Sinsheimer, 46 Md. 321; Portland & G. T. Co. v. Bobb, 88 Ky. 226; Bank v. Padgett, 69

Ga. 164; G. C. Co. v. Maxwell, 22 Fed. 196; Shields v. Clifton H. L. Co., 94 Tenn. 123. (3) "It is entirely settled that the corporate existence of such corporation, *de facto,* cannot be inquired into collaterally. It is, as to all who contract with it, to be assumed to be a corporation *de jure.* The legality of its corporate existence may be inquired into by the State, but by no one else. And this is as true where the corporation is formed under a general law as it is where the corporate existence is claimed under a special charter." Stout v. Zulich, 48 N. J. L. 599. "The reason is that if rights and franchises have been usurped, they are the rights and franchises of a sovereign, and he can alone interfere. Until such interposition, the public may treat those possessing and exercising corporate powers under color of law as doing so rightfully. The rule is in the interest of the public and is essential to the safety of business transactions with corporations." Duggan v. Colorado N. I. Co., 11 Colo. 113; Finch v. Ullman, 105 Mo. 263; Catholic Church v. Tobbein, 82 Mo. 424; Bradley v. Reppell, 133 Mo. 553; Bibb v. Hall, 100 Ala. 96; Rheinhard v. Virginia M. Co., 107 Mo. 616; N. O. D. Co. v. La., 180 U. S. 328; President, etc., v. Mc-Canaby, 16 S. R. 140; People v. M. W. Co., 97 Cal. 280. A general rule, not limited to cases where one contracts with corporation. Doty v. Paterson, 155 Ind. 64; 1 Clark and Marshall, Private Corps., 242-3-4. And where proceedings forming corporations are all regular in every way on their face from beginning to end, and an attack is made on the grant, it is a collateral attack. Lovitt v. Russell, 138 Mo. 483; Reed Bros. v. Nicholson, 158 Mo. 631; Branford v. Woolf, 103 Mo. 391; Randolph, Com. Paper, sec. 13; Case M. Co. v. Soxman, 138 U. S. 437. (4) The fallacy of plaintiff's position can be shown in a few words. In order to be a corporation there need be but one franchise—the right to exist —a franchise resulting from the act of incorporation. It is of the same nature in all corporations. This fran-

chise is granted to those who agree to incorporate, hence, it does not belong to the corporation, but to the incorporators; although the corporation is not the owner of this franchise, yet it is its organic life, and whenever it acts it is by virtue of.it. It has been styled "corporate capacity." California v. Railroad, 127 U. S. 41. With us the source of a franchise is the government, State or Federal, and it exists by reason of legislative authority. "And is there any difference in legal contemplation between a grant of corporate franchises and a grant of tangible property? No such difference is recognized in any decided case, nor does it exist in the common apprehension of mankind." Dartmouth College Case, 4 Wheat. 595; Conway v. Taylor, 1 Black 632; Randolph v. Larned, 27 N. J. Eq. 561; Penn College Cases, 13 Wall. 212. Franchises are referred to as legislative contracts. The Binghamton Bridge, 3 Wall. 74. The power results from its sovereignty. Langdon v. Mayor, etc., 93 N. Y. 156. Franchises are vested rights. Dartmouth College Case, 4 Wheat. 684. Corporate existence is a grant. Paul v. Virginia, 8 Wall. 181; Wright v. Nagle, 101 U. S. 794.

*Gage, Ladd & Small* and *Frank Hagerman* also for respondents.

(1) The certificate of incorporation issued by the Secretary of State upon the certified copy of the articles of association, recorded in the recorder's office of Jackson county, in strict compliance with the law, is conclusive of the existence of the corporation as against collateral attack. R. S. 1899, secs. 955, 1314, 1282 and 987; State ex inf. v. Lund, 157 Mo. 228; Hurt v. Salisbury, 55 Mo. 310; Reinard v. Mining Co., 107 Mo. 624; Roll v. Mining Co., 52 Mo. App. 67; Railroad Gazette, v. Wherry, 58 Mo. App. 425; Thompson on Corporations, secs. 248, 296, 2991, 7709; Casey v. Galli, 94 U. S. 673; Powder Co. v. Sinsheimer, 46 Md. 320; Boston,

etc., Co. v. Boston Rubber Co., 149 Mass. 436; Ryland
v. Hollinger, 117 Fed. 216; Demarest v. Flack, 128 N.
Y. 205; Kayser v. Bremen, 16 Mo. 88; Wells Co. v. Gas-
tonia Co., 198 U. S. 177; Hughes v. Railroad, 9 Cush.
256; Rice v. Bank, 126 Mass. 300; Cozens v. Brick Co.,
165 Ill. 218, 46 N. E. 788; Petty v. Hayden, 88 N. W.
339, 115 Ia. 212; Latimer v. Baird, 76 Fed. 536; Palmer
v. Lawrence, 3 Sandf. (N. Y.) 161; Cook on Corpora-
tions, sec. 424; Vanneman v. Young, 52 N. J. L. 403;
Bates v. Wilson, 14 Col. 56; Steam Stone Cutter Co.
v. Scott, 157 Mo. 525; Gunderson v. Bank, 199 Ill. 420;
State ex inf. v. Fleming, 147 Mo. 1, 158 Mo. 558; Oly-
phant Sewage-Drainage Co. v. Borough of Olyphant,
46 Atl. 896, 196 Pa. St. 553; Monongahela Bridge Co.
v. Pittsburgh, etc., Co., 46 Atl. 99, 196 Pa. St. 25.    (2)
The Siegel-Sanders Company became and was a cor-
poration *de facto* and its corporate existence cannot
be questioned except by the State in quo warranto or
other direct proceeding, notwithstanding the allega-
tions of fraud in the petition.   Bates v. Wilson, 14 Colo.
56; Morawetz on Corp., secs. 769, 1022; Kayser v. Bre-
men, 16 Mo. 88; Wells Co. v. Gastonia Co, 198 U. S.
177; Railroad v. Coal & Min. Co., 161 Mo. 288; Armour
v. Bements Sons, 123 Fed. 56; Lead Co. v. Paint Co.,
80 Mo. App. 264; Gow v. Collins, 109 Mich. 45; Gund-
erson v. Bank, 199 Ill. 420; Rice v. Bank, 126 Mass. 300.
(3) Failure to acknowledge the articles of association
is not sufficient to render the incorporation void.   Bates
v. Wilson, 14 Colo. 56; Duggan v. Colo. Mort. & Inv.
Co., 11 Colo. 113; Stout v. Zulich, 48 N. J. L. 599;
Gilman v. Druse, 111 Wis. 14; Johnson v. Schulin, 70
Minn. 303; Doty v. Patterson, 155 Ind. 60; Hotel Co.
v. Wright, 73 Mo. App. 241; Tenn. Automatic Light-
ing Co. v. Massey, 56 S. W. 35; East Norway Church
v. Froislie, 37 Minn. 447; Slocum v. Head, 105 Wis.
431; Swarthout v. Railroad, 24 Mich. 389.    (4)    The
alleged failure of the stock subscribers to pay their
subscriptions, either before the issue of the certificate

of the Secretary of State, as alleged in the petition, or at any time afterwards, as argued by appellant, does not deprive the company of *de facto* corporate existence or make the subscribers for the stock liable as partners for the company's debts. Bates v. Aspinwall, 19 N. Y. 121; Gunderson v. Bank, 199 Ill. 420; Elizabethtown Gaslight Co. v. Green, 46 N. J. Eq. 118; Powder Co. v. Sinsheimer, 46 Md. 315; Swarthout v. Railroad, 24 Mich. 389; Ryland v. Hollinger, 117 Fed. 216; Hastings v. Railroad, 9 Cush. 596; Gow v. Collins, 109 Mich. 45; Palmer v. Lawrence, 3 Sandf. (N. Y.) 161; Armour v. Bements Sons, 123 Fed. 56; State ex rel. v. Wood, 13 Mo. App. 139, 84 Mo. 378; Liebke v. Knapp, 79 Mo. 22; Woolfolk v. January, 131 Mo. 620; Bank v. Bank, 130 Mo. 155. (5) The remedy of creditors in case of the failure of subscribers to pay in full subscriptions of capital stock, is by suits in equity to compel them to make good the amounts subscribed, and this remedy excludes the possibility of partnership liability. Shields v. Watts, 94 Mo. 410; Van Cleve v. Berkey, 143 Mo. 109; Shields v. Hobart, 172 Mo. 491. These are all suits in equity: Berry v. Rood, 168 Mo. 316 (suit by receiver against stockholder); Hequembourg v. Edwards, 155 Mo. 514 (suit by assignee against directors); Woolfolk v. January, 131 Mo. 620 (motion for execution); Steam Stone Cutter Co. v. Scott, 157 Mo. 520, (suit under sec. 987, R. S. 1889); Scoville v. Thayer, 105 U. S. 143; Patterson v. Lynde, 106 U. S. 520; Handley v. Stutz, 139 U. S. 428; Taylor v. Cummings, 127 Fed. 108. (6) None of the authorities cited in appellant's brief sustains any one of the positions contended for—either that the certificate of the Secretary of State is not conclusive as to the corporate existence against collateral attack, or that fraud in obtaining the incorporation, failure to acknowledge the articles or to have the entire stock subscribed in good faith, or to have the stock paid up, as stated in the articles, are sufficient to authorize collateral attack upon the corporate existence.

GANTT, J.—This action was brought June 18, 1901, in the circuit court at Kansas City, Missouri. And all of the defendants were duly served with process. Afterwards on January 12, 1903, by leave of the circuit court, plaintiff filed in said cause an amended petition in words and figures as follows, omitting caption:

"And now on this day again comes the said plaintiff and by leave of court first had and obtained, files this amended petition herein.

"Plaintiff for its cause of action says that during all the times hereinafter mentioned plaintiff was and still is a corporation duly created and existing under the laws of Congress of the United States, as a national bank, for the purpose of doing business as such national bank at the city of Deadwood, in the State of South Dakota.

"Plaintiff further states that on the 27th day of November, 1899, said defendants and one William Askew, for the purpose of forming a concern and company under the name of Siegel-Sanders Live Stock Commission Company, which thereafter should engage and did engage in the live stock commission business at the Stock Yards Exchange Building in Kansas City, Missouri, executed and signed certain articles of association, but that said articles of association were not acknowledged by the defendants, Frank Rockefeller and E. E. Matchette, and that said articles of association of said defendants and said Askew, without being acknowledged by defendants Rockefeller and Matchette, were filed and recorded in the office of the register of deeds at Kansas City, Jackson county, Missouri, on the 28th day of November, 1899, and that a certified copy of said articles of association was, on December 1, 1899, filed and recorded in the office of the Secretary of State of Missouri, and a certificate of incorporation was on said last day executed by said Secretary of State by which said certificate said Siegel-Sanders Live Stock Commission Company purported to be a corporation.

"Plaintiff further states that defendants in said articles of association stated and represented as follows, to-wit:

" 'The capital stock of this corporation is two hundred and fifty thousand dollars divided into 2,500 shares of the par value of one hundred dollars each, the same has been bona-fide subscribed and all thereof actually paid up in lawful money of the United States and is in the custody of the persons hereinafter named as the first board of directors. . . .

" 'Fourth. The names and places of residence of the several stockholders and the number of shares subscribed by each are as follows:

| Names. | Places of Residence. | No. of shares. |
|---|---|---|
| Frank Rockefeller, | Cleveland, Ohio...... .... | 1,000 |
| Wm. Askew, | Kansas City, Missouri.... ...... | 250 |
| E. E. Matchette, | Kansas City, Missouri.... .... | 250 |
| Frank Siegel, | Kansas City, Missouri.. ........ | 500 |
| R. D. Swain, | Kansas City, Missouri...... .... | 500 |

" 'Fifth. The business of this corporation shall be managed by a board of directors composed of five directors and the following shareholders shall constitute the board of directors of this corporation for the first year and until their successors can be elected as provided by the by-laws of this corporation: Frank Rockefeller, Cleveland, Ohio; Wm. Askew, Kansas City, Missouri, Frank Siegel, Kansas City, Missouri; E. E. Matchette, Kansas City, Missouri; R. D. Swain, Kansas City, Missouri.'

"Plaintiff further states that notwithstanding said statements so made by defendants and said Askew in said articles of association, the capital stock of said company was never in fact paid up.

"That said Frank Rockefeller did not in fact and had not at the time of the filing of said articles of association in the offices of the recorder of deeds and of said Secretary of State, paid into the treasury or to the

directors of said company the sum of one hundred thousand dollars, or any part thereof. That the said William Askew did not pay, and had not at the time of the filing of said articles of association, as aforesaid, paid into the treasury or to the directors of said company the sum of $25,000, or any other sum. That the said E. E. Matchette did not pay and had not at the time of the filing of said articles of association, paid into the treasury or to the directors of said company the sum of $25,000, or any other sum. That the said Frank Siegel had not at the time of the filing of said articles of association paid into the treasury or to the directors of said company the sum of $50,000, or any other sum. That the said R. D. Swain did not pay, and had not at the time of the filing of said articles of association, paid into the treasury or to the directors of said company, the sum of $50,000, or any other sum.

"Plaintiff further states that it was not true, as alleged in said articles of association, that all the stock mentioned therein, aforesaid, had been bona-fide subscribed and actually paid up in lawful money of the United States, or any other property or valued thing, and that it was and is not true, as alleged in said articles of association, that the said capital stock thereof, to-wit, $250,000, or any other sum, was in the custody of the persons therein named as the first board of directors.

"Plaintiff further states that at the time of the signing and executing and filing, as aforesaid, their said articles of association, it was agreed by and between defendants and said Askew that the capital stock of said company should not in fact be paid up, and that pursuant to said agreement the capital stock of said company was not in fact paid up and no portion of said capital stock was paid at the time of the filing of said articles of association, as aforesaid, or at the time of the issuance by the Secretary of State of the State of Missouri of said certificate thereon, and the statements

and allegations in said articles of association that the said capital stock of said $250,000 had in fact been bona-fide subscribed and had in fact been paid up in lawful money of the United States, was wholly false and untrue, and was known to be false and untrue by all of the said defendants and said Askew at the time of the executing and subscribing and filing, as aforesaid, of said articles of association.

''Plaintiff further states that it was agreed among all said defendants and said Askew that the capital stock of said company was not in fact to be paid up either in money, property or labor, but that the said capital stock should be issued as fully paid up without in fact being paid up.

''Plaintiff further states that by reason of the premises the certificate of incorporation obtained by defendants and said Askew from said Secretary of State was obtained by fraud and deceit; that said Secretary of State was not informed by defendants and said Askew, or by any of them at the time of their obtaining said certificate of incorporation from said Secretary of State, of the said non-payment of said capital stock, and of the said agreement between defendants and said Askew that the same should not be paid as aforesaid, and that the Secretary of State was not informed that said articles of association were not acknowledged before the filing thereof by defendants, Frank Rockefeller and E. E. Matchette, and that said certificate of incorporation was so issued by the said Secretary of State in ignorance of the facts stated, as aforesaid, that said capital stock had not been paid, and was not to be paid, and that said articles of association had not been acknowledged by said defendants, Frank Rockefeller and E. E. Matchette, and that, therefore, the obtaining of said certificate of incorporation by defendants and said Askew from said Secretary of State was fraudulent, null and void, both as to said Secretary of State and the State of Missouri, and that the obtaining of

said certificate of incorporation was likewise fraudulent, null and void as to all persons who should thereafter deal and did deal with said company, and that by reason of the premises said company never became a corporation created in conformity to the laws of the State of Missouri.

"But, that said company by reason of the premises became, was and is a partnership; that said company did business at the Live Stock Exchange in said Kansas City from December 1, 1899, until May, 1901, and that during all said last period from December 1, 1899, to May, 1901, said Siegel-Sanders Live Stock Commission Company did business as a partnership, and that defendants and said Askew composed and were members of said partnership, who carried on and conducted the live stock commission business of said company as such partnership so created and existing.

"Plaintiff further states that on November 1, 1899, one W. B. Grimes, Jr., being indebted to the Siegel-Sanders Live Stock Commission Company, a corporation, which had been created under the laws of the State of Kansas, in the sum of $22,537.56, executed and delivered on said date to said named company his four certain promissory notes each for the sum of $5,634.39, and all of which were payable six months after said November 1, 1899; that said notes were payable by said Grimes to the order of said last company, and were given for a loan made by said company to said Grimes for said sum of $22,537.56.

"Plaintiff further states that on said November 1, 1899, said Grimes, for the purpose of securing to said company the payment of said four promissory notes, made, executed and delivered to said last company a certain chattel mortgage, dated November 1, 1899, and by which chattel mortgage said Grimes conveyed to said company 799 head of dehorned western steers, three years old, branded W on left side, bought of M. J. Walden; that said chattel mortgage conveying said 799

head of steers to secure the payment of said promissory notes was in the usual form of a chattel mortgage, and that said mortgage was, on November 3, 1899, duly filed for record with the register of deeds of Clark county, Kansas, in which last county said 799 head of steers were located and situated at the time of making said mortgage, and in which last county said Grimes resided at the time of the execution of said mortgage, and that said mortgage was so recorded with the register of deeds of said Clark county in conformity with the laws of the State of Kansas, which required the recording of said chattel mortgage in the county in which the mortgagor resided.

"Plaintiff further states that said mortgage was given to said last company, and to its successors and assigns, and that by the giving of said mortgage said last company, its successors and assigns, obtained a first lien upon 799 head of steers which were owned by said Grimes and the right to the possession thereof.

"Plaintiff files copies of said notes and mortgages herewith.

"Plaintiff further states that after the giving of said notes by said Grimes to said last company and the execution and delivery by said Grimes to said company of said last chattel mortgage, said company, in the month of November, 1899, in the regular course of business, endorsed, sold and delivered said notes and chattel mortgages to this plaintiff, which paid said last company the full face value of said notes and mortgage thereof, less the usual discount, and that thereafter said plaintiff continued to be the owner and holder of said notes and mortgages so given by said Grimes and that said notes have never been paid, but remain wholly due and unpaid.

"Plaintiff further states that in the month of March, 1900, and while said chattel mortgage was in full force as a valid security held by plaintiff for the payment of said notes, plaintiff was entitled to the immedi-

ate possession of said 799 steers, but said first partnership commission company named herein and composed of said defendants and Askew, and which, as aforesaid, did business from December 1, 1899, to May, 1901, unlawfully and wrongfully took possession of said 799 head of steers and sold the same in the live stock markets at Kansas City, St. Louis and Chicago and received the proceeds thereof, and thereby converted said 799 steers and said proceeds to their, the defendants,' own use.

"Plaintiff further states that the amount realized by said partnership association so composed of said defendants and said Askew from the sale of the 799 steers so conveyed by said mortgage held by plaintiff was the sum of $31,960; that defendants composing said partnership association first named should have paid said sum of $31,960, the proceeds of said cattle so conveyed by said mortgage held by plaintiff so sold by said partnership association, to this plaintiff, but that said defendants and said Askew have not paid said sum of $31,960 to this plaintiff, or any part thereof.

"Wherefore, plaintiff prays judgment against said defendants for said sum of $31,960, and for lawful interest and costs."

"SECOND COUNT.

"Plaintiff for a still further cause of action against defendants, states as follows:

"Plaintiff for its cause of action says that during all the times hereinafter mentioned plaintiff was and still is a corporation duly created and existing under the laws of Congress of the United States as a national bank for the purpose of doing business as such national bank at the city of Deadwood, in the State of South Dakota.

"Plaintiff further states that on the 27th day of November, 1899, said defendants and one William Askew, for the purpose of forming a concern and company under the name of Siegel-Sanders Live Stock

Commission Company, which thereafter should engage and did engage in the live stock commission business at the Stock Yards Exchange Building in Kansas City, Missouri, executed and signed certain articles of association, but that said articles of association were not acknowledged by the defendants, Frank Rockefeller and E. E. Matchette, and that said articles of association of said defendants and said Askew, without being acknowledged by defendants, Rockefeller and Matchette, were filed and recorded in the office of the register of deeds at Kansas City, Jackson county, Missouri, on the 28th day of November, 1899, and that a certified copy of said articles of association was, on December 1, 1899, filed and recorded in the office of the. Secretary of State of the State of Missouri, and a certificate of incorporation was, on said last day, executed by said Secretary of State by which said certificate said Siegel-Sanders Live Stock Commission Company purported to be a corporation.

"Plaintiff further states that defendants in said articles of association stated and represented as follows, to-wit:

" 'The capital stock of this corporation is two hundred and fifty thousand dollars, divided into 2,500 shares of the par value of one hundred dollars each, the same has been bona-fide subscribed and all thereof actually paid up in lawful money of the United States and is in the custody of the persons hereinafter named as the first board of directors. . . .

" 'Fourth. The names and places of residence of the several stockholders and the number of shares subscribed by each are as follows:

| Names. | Places of Residence. | No. of Shares |
|---|---|---|
| Frank Rockefeller, | Cleveland, Ohio | 1,000 |
| William Askew, | Kansas City, Missouri | 250 |
| E. E. Matchette, | Kansas City, Missouri | 250 |
| Frank Siegel, | Kansas City, Missouri | 500 |
| R. D. Swain, | Kansas City, Missouri | 500 |

" 'Fifth.   The business óf this corporation shall be managed by a board of directors composed of five directors and the following shareholders shall constitute the board of directors of this corporation for the first year and until their successors can be elected as provided by the by-laws of this corporation: Frank Rockefeller, Cleveland, Ohio; Wm. Askew, Kansas City, Missouri; Frank Siegel, Kansas City, Missouri; E. E. Matchette, Kansas City, Missouri; R. D. Swain, Kansas City, Missouri.'

"Plaintiff further states that notwithstanding said statements so made by defendants and said Askew in said articles of association, the capital stock of said company was never in fact paid up.   That said Frank Rockefeller did not in fact pay and had not at the time of the filing of said articles of association in the offices of said recorder of deeds and of said Secretary of State, paid into the treasury or to the directors of said company the sum of $100,000, or any part thereof.   That said William Askew did not pay, and had not at the time of the filing of said articles of association, as aforesaid, paid into the treasury or to the directors of said company the sum of $25,000, or any other sum.   That the said E. E. Matchette did not pay and had not at the time of the filing of said articles of association, paid into the treasury or to the directors of said company the sum of $25,000, or any other sum.   That the said Frank Siegel had not at the time of the filing of said articles of association paid into the treasury or to the directors of said company the sum of $50,000, or any other sum.   That the said R. D. Swain did not pay, nor had at the time of the filing of said articles of association, paid into the treasury  or to the directors of said company the sum of $50,000, or any other sum.

"Plaintiff further states that it was not true, as alleged in said articles of association, that all the stock mentioned therein, as aforesaid, had been bona-fide sub-

195 Sup.—3

scribed and actually paid up in lawful money of the United States, or any other property or valuable thing, and that it was and is not true, as alleged in said articles of association, that the said capital stock thereof, to-wit, $250,000, or any other sum, was in the custody of the persons therein named as the first board of directors.

"Plaintiff further states that at the time of the signing and executing and filing, as aforesaid, their said articles of association, it was agreed by and between defendants and said Askew that the capital stock of said company should not in fact be paid up, and that pursuant to said agreement the capital stock of said company was not in fact paid up and no portion of said capital stock was paid at the time of the filing of said articles of association, as aforesaid, or at the time of the issuance by the Secretary of State of Missouri of said certificate thereon and the statements and allegations in said articles of association that the said capital stock of said $250,000 had in fact been bona-fide subscribed and had in fact been paid up in lawful money of the United States, was wholly false and untrue, and was known to be false and untrue by all of the said defendants and said Askew at the time of the executing and subscribing and filing, as aforesaid, of said articles of association.

"Plaintiff further states that it was agreed among all said defendants and said Askew that the capital stock of said company was not in fact to be paid up either in money, property or labor, but that the said capital stock should be issued as fully paid up without in fact being paid up.

"Plaintiff further states that by reason of the premises the certificate of incorporation obtained by defendants and said Askew from said Secretary of State was obtained by fraud and deceit; that said Secretary of State was not informed by defendants and said Askew, or by any of them at the time of their obtain-

ing said certificate of incorporation from said Secretary of State, of the said non-payment of said capital stock, and of the said agreement between defendants and said Askew that the same should not be paid as aforesaid, and that said Secretary of State was not informed that said articles of association were not acknowledged before the filing thereof by defendants, Frank Rockefeller and E. E. Matchette, and that said certificate of incorporation was so issued by the said Secretary of State in ignorance of the facts stated as aforesaid, that said capital stock had not been paid, and that said articles of association had not been acknowledged by said defendants, Frank Rockefeller and E. E. Matchette, and that, therefore, the obtaining of said certificate of incorporation by defendants and said Askew from said Secretary of State was fraudulent, null and void, both as to said Secretary of State and the State of Missouri, and that the obtaining of said certificate of incorporation was likewise fraudulent, null and void as to all persons who should thereafter deal and did deal with said company, and that by reason of the premises said company never became a corporation created in conformity to the laws of the State of Missouri.

"But, that said company by reason of the premises became, was and is a partnership; that said company did business at the Live Stock Exchange Building in said Kansas City from December 1, 1899, until May, 1901, and that during all said last period from December 1, 1899, to May, 1901, said Siegel-Sanders Live Stock Commission Company did business as a partnership, and that defendants and said Askew composed and were members of said partnership, who carried on and conducted the live stock commission business of said company as such partnership so created and existing.

"Plaintiff further states that on October 31, 1900, said partnership association, known as Siegel-Sanders

Live Stock Commission Company and so composed of defendants as partners therein, was the owner and holder of a certain note executed by W. B. Grimes, Jr., bearing date, Kansas City, Kansas, October 31, 1900, and by which, on May 7, 1901, said Grimes promised to pay to the order of Siegel-Sanders Live Stock Commission Company, the partnership aforesaid, at their office, $23,386.78 with interest from maturity at the rate of eight per cent per annum until paid, for value received, a copy of which last note is filed herewith.

"Plaintiff further states that on October 31, 1900, said Siegel-Sanders Live Stock Commission Company, the partnership association aforesaid, composed of said defendants, indorsed and assigned for value paid by this plaintiff at the time, said note to this plaintiff and by said assignment indorsed on the back of said note waived demand, notice and protest of same and guaranteed payment thereof at maturity, said assignment and guaranty beng signed by said Siegel-Sanders Live Stock Commission Company, the partnership association aforesaid, on the back of said note; that thereupon plaintiff became and ever since has been the owner and holder of said last note; that said note and the whole amount of the principal and interest thereon remain wholly due and unpaid.

"The premises considered, plaintiff prays judgment on said last note against defendants for the said sum of $23,386.76 with interest at the rate of eight per cent from and after May 7, 1901."

And afterwards, on March 11, 1903, said defendants filed in said cause a demurrer to said amended petition in words and figures as follows, viz.:

"In the circuit court of Jackson County, State of Missouri, at Kansas City, January term, 1903.

"First National Bank of Deadwood, South Dakota, a corporation, plaintiff, vs. Frank Rockefeller, E. E. Matchette, Frank Siegel and R. D. Swain, defendants.

"1.  Now come the defendants, Frank Rockefel-

ler, E. E. Matchette and R. D. Swain, and demur to the first count in the petition of plaintiff in the above-entitled cause for the reason that said first count does not state facts sufficient to constitute a cause of action.

"2. Said defendants demur to the second count of the petition of plaintiff in the above-entitled cause for the reason that said second count does not state facts sufficient to constitute a cause of action.

"Wherefore said defendants pray judgment."

And afterwards, on June 20, 1903, the court sustained said demurrer and plaintiff declining to plead further, final judgment was rendered for the defendants, and thereupon on June 24, 1903, plaintiff filed an affidavit for an appeal and an appeal was granted by the circuit court to this court.

I.   At the expense of brevity, we have set forth the petition in full, but stripped of its technical habiliments and reduced to its last analysis, it may be said that the two basic propositions upon which the petition must stand, if at all, are the charges, first, that the Siegel-Sanders Live Stock Commission Company never became a corporation under the laws of this State, because the defendants Frank Rockefeller and E. E. Matchette did not acknowledge the articles of association set forth in the petition and which were filed in the office of the recorder of deeds of Kansas City, Missouri, and a certified copy thereof filed and recorded in the office of the Secretary of State, although such articles purported on their face to have been acknowledged by the said Rockefeller and Matchette, and secondly, because of the failure of the incorporators of said commission company to pay into the treasury, or to the directors of said company, the amount of the stock subscribed for by them in said company in lawful money of the United States at the time of filing said articles, or at the time of the issuance by the Secretary of State of Missouri of his certificate of incorporation and for

these reasons, the said incorporators, defendants herein, became partners and liable to the plaintiff as such. Neither of these propositions so earnestly advanced by the learned counsel for the plaintiffs is new; both of them have been advanced, in circumstances similar to those out of which this suit originated, in this jurisdiction, and in many of the courts of our sister states and in the courts of the United States.

Addressing ourselves to the first proposition, towit, that the failure of the defendants Rockefeller and Matchette to acknowledge the articles before they were filed in the office of the recorder of deeds of Jackson county and with the Secretary of State, and the failure of the incorporators to pay the amount of their capital stock into the treasury, or to the board of directors, rendered the attempt at incorporation ineffectual and void, the question presented is, did this failure to take this initiatory step have the effect to render the certificate of the Secretary of State incorporating the said commission company void and of no effect? For the proper determination of this question reference must be had to the statute of this State providing for the incorporation and creation of private corporations.

Section 955 of chapter 12, Revised Statutes 1899, provides: "Whenever any corporation shall be organized under the laws of this State, it shall be the duty of the officers of said corporation to file with the Secretary of State a copy of the articles of association or incorporation, and the corporate existence of such corporation shall date from the time of filing said copy of such articles; and a certificate by the Secretary of State, under the seal of the State, that said corporation has become duly organized, shall be taken by all courts of this State as evidence of the corporate existence of such corporation; a certified copy of said certificate of the Secretary of State shall be filed and recorded in the office of the recorder of deeds of the county in which the corporation is organized."

Section 1313 provides: "The articles of agreement shall be signed and acknowledged by all the parties thereto, and recorded in the office of the recorder of deeds of the county or city in which the corporation is to be located; and a certified copy of such recorded instrument shall be filed in the office of the Secretary of State."

Section 1314 provides: "The Secretary of State shall give a certificate that said corporation has been duly organized, and the amount of its capital, and such certificate shall be taken by all courts of this State as evidence of the corporate existence of such corporation. The persons so acknowledging such articles of association, and their associates and successors, shall, for the period not to exceed fifty years next succeeding the issuing of such certificate by the Secretary of State, be a body corporate; and by such name they and their successors shall be entitled to have, possess and enjoy all the rights and privileges conferred by law upon corporations, subject to the provisions of this article."

The last two sections appear in article 9, entitled, "Manufacturing and Business Companies."

By reference to the petition it will be observed that it is conceded by the plaintiff that the papers presented by the corporators of the Siegel-Sanders Live Stock Commission Company to the Secretary of State were in form in every respect and in strict compliance with the requirements of the statute, and that upon them a certificate of incorporation was granted and issued by the Secretary of State on December 1, 1899, as provided by section 1314, but the contention of the plaintiff is, and it so alleges, that said company never became a corporation, but became, was and is a partnership, because as a matter of fact said articles of association were not acknowledged by the defendants Rockefeller and Matchette, before they were filed and recorded in the office of the register of deeds, at Kansas City, Jackson county, Missouri, and a certified copy thereof filed and recorded

in the office of the Secretary of State. It is insisted by the plaintiff that as the demurrer confesses that the defendants Rockefeller and Matchette did not acknowledge the articles of association before they were filed with the register of deeds and Secretary of State, and as the statute (section 1313) provides that the articles of agreement shall be signed and acknowledged by *all* the parties thereto, no corporation was legally created, notwithstanding the Secretary of State accepted the articles and issued his certificate of incorporation.

In Hurt v. Salisbury, 55 Mo. 310, it was held that where articles of association were duly acknowledged and recorded in the office of the recorder of the county where the corporation was located, but were not then filed with the Secretary of State, the officers of the corporation had no power to issue the note of the company, and the note issued and signed by them as directors would bind them personally and not the corporation, and that the date of the corporate existence of the corporation was of the time of the filing of the articles in the office of the Secretary of State, and that until the officers took the final and necessary step of depositing and filing in the office of the Secretary of State a copy of the articles of association, the corporation had no power to transact business as a corporation under section 2 of chapter 62 of the General Statutes of 1865 (1 Wagner's Statutes, 289). It is obvious that the decision in that case does not support the contention of the plaintiff in this case, because it is plain that in that case, the condition precedent, to-wit, the filing of the articles in the office of the Secretary of State, was the final act entitling them to incorporate and fixed the date when their corporate existence began. Here the final act, to-wit, the issuing of the certificate of incorporation by the Secretary of State, is conceded to have been done on the first day of December, 1899, and before the transaction of which plaintiff complains had occurred.

In Granby Mining Company v. Richards, 95 Mo.

106, it appears that the defendant signed certain notes for the Missouri Zinc Company, by himself as president, and it was alleged that he and others not made defendants were partners doing business under the name of the Missouri Zinc Company. The defense was that the note was the note of a corporation, that the Missouri Zinc Company was duly organized, and that the defendant and the other members of the company were not chargeable for its debts as partners. The company was organized under a special act of February 20, 1865, which among other things provided: "When such special company or companies are created and organized, a certificate in writing shall be filed in the office of the circuit clerk of the county in which the business of the company is carried on, and a duplicate thereof in the office of Secretary of State," etc. It appeared that a certificate of its organization in due form was filed with the Secretary of State in March, 1869. Discussing the failure of the company to file the certificate with the circuit clerk, Judge BLACK, speaking for this court, said: "This language does not indicate, nor is there anything in the general scope of the act to indicate, that the filing of the certificate with the circuit clerk is made a matter of condition precedent to the assumption of corporate powers, or the execution of corporate contracts. The failure to file the certificate with the clerk of the circuit court is an omission of which the State alone can complain." And it was held that the defendant was not liable individually and as partner for the debts of the corporation.

A consideration of the sections of our statutes providing for the creation of business corporations, will show that the law has provided the steps which individuals seeking to become incorporated shall take, to-wit, the signing and acknowledging articles of association, enumerating the purposes of the corporation and requiring the filing of these articles in the office of the recorder of deeds of the county in which the corpor-

ation is to be located and filing a certified copy in the office of the Secretary of State. These are the acts which the law requires of those who desire to become incorporated, but after all these things are done, still there is no incorporation until the State, through its Secretary of State, grants the certificate of incorporation, which takes the place of a special act of the Legislature prior to our Constitution of 1875. This certificate of the Secretary of State, then, is a grant of a franchise to become a corporation, and without it there can be no corporation *de jure* under our laws. The parties to this grant are the State on the one hand and the incorporators on the other, and when once issued and accepted by the company, no one can dispute the corporate existence except the State in a direct proceeding.

In Kayser v. Trustees of Bremen, 16 Mo. 88, Judge SCOTT, speaking for this court, said: "The facts conceded, we conceive, gave jurisdiction to the county court over the subject-matter, and having declared the town incorporated, the validity of its existence can only be contested by proceeding in a *quo warranto*. It cannot be shown, in defense to a suit of a corporation, that the charter was obtained by fraud; neither can it be shown that the charter has been forfeited by misuser or nonuser. Advantage can only be taken of such forfeiture by process on behalf of the State, instituted directly against the corporation, for the purpose of avoiding its charter, and individuals cannot avail themselves of it in collateral suits, until it be judicially declared."

That it is plainly competent for the Legislature to provide for a public officer who shall issue this certificate of incorporation in behalf of the State, is no longer an open question. With us the source of a corporate franchise is the State through its legislative branch of government. In the Dartmouth College case (4 Wheat.

l. c. 657), Chief Justice MARSHALL said: "A corporation is defined by Mr. Justice BLACKSTONE to be a franchise. . . . This franchise, like other franchises, is an incorporeal hereditament, issuing out of something real or personal, or concerning or annexed to, and exercisable within a thing corporate. To this grant or this franchise the parties are, the king, and the persons for whose benefit it is created, or trustees for them."

In Railroad Gazette v. Wherry, 58 Mo. App. l. c. 426, Judge ROMBAUER, speaking for the Court of Appeals, said: "Hence, even if the necessity of antecedent record and its failure were shown by the bill of exceptions, it is, to say the least, doubtful whether such facts, under the decision of the Supreme Court in Granby Mining Company v. Richards, 95 Mo. 106, would render the defendants individually responsible as partners for a bill contracted in the corporate name after the issue of the final certificate of incorporation."

Language could hardly be more emphatic in a statute than that contained in section 1314 wherein it is said: "The persons so acknowledging such articles of association, and their associates and successors, shall, for the period not to exceed fifty years next succeeding the issuing of such certificate by the Secretary of State, be a body corporate." From the date then of the issuing of the certificate the incorporators became a body corporate.

In Ryland v. Hollinger, 117 Fed. 216, the Circuit Court of Appeals of the United States for the Eighth circuit, construed section 2492, Revised Statutes 1889, now section 955, Revised Statutes 1899, to mean that the existence of a corporation formed under that section began when the Secretary of State issued the certificate of incorporation. Section 1314 provides when the grant of the State of corporate powers shall take effect, and that is upon the issuing of the certificate by the Secretary of State. In this manner the State has

elected to show its assent to the creation of the corporation, and then the section further provides that this certificate by the Secretary of State shall without more be received by all the courts of this State as evidence of the corporate existence. This being, then, a grant of the State and by the State, it is not subject to be attacked collaterally by any other person and only by the State itself in a direct proceeding for that purpose. A charter thus obtained under our general law had all the force and effect of a legislative charter prior to our constitutional provision inhibiting the grant of special charters by the Legislature.

But it is earnestly and ably urged by the learned counsel for the plaintiff that the acknowledgment of the articles of association by the incorporators is a condition precedent which must be performed before there can be a corporate existence under the statute. Unquestionably, both in legislative charters and in charters under general laws for the incorporation of companies, the statute itself often provides that the corporation shall not come into existence or have the capacity to do business until certain conditions precedent have been complied with, and in such cases unless the acts or things required to be done are done there cannot be a corporation. This is well illustrated in the case of Railroad v. Shambaugh, 106 Mo. 566, in which this court said: "Where the act of incorporation does not in and of itself confer corporate capacity, but provides for the doing of certain things, upon the doing of which the company shall become a body corporate, the performance of these things constitutes conditions precedent, and until performed the company has no corporate existence. [Granby Mining Co. v. Richards, 95 Mo. 110; Hammett v. Railroad, 20 Ark. 204; Lyons v. Railroad, 32 Md. 18.] If, however, the charter confers corporate capacity without any conditions precedent, acceptance of the charter is all that need be shown. In such cases the act of incorporation

brings the corporate body into existence.    The act of January 22, 1857, declares that there is hereby incorporated a company called the St. Joseph & Iowa Railroad Company with a capital stock of $2,000,000, and then goes on to designate the persons who shall constitute the first board of directors.    No conditions precedent are prescribed.    It is a present grant of corporate powers.    The corporation came into being upon the acceptance of the charter.''

We are cited by the learned counsel for the plaintiff to the recent decision of the Supreme Court of the United States in Wells Company v. Gastonia Company, 198 U. S. 177.    In that case the plaintiff corporation was organized under the general corporation laws of the State of Mississippi.    In that State individuals may become incorporated for certain purposes under general laws.    The first step towards incorporation is to apply to the Governor for a charter, stating the purposes for which the incorporation is to be created.    That officer then takes the advice of the Attorney-General as to the constitutionality and legality of the provisions of the proposed charter; if the Governor approves the charter and causes the great seal of the State to be affixed thereto by the Secretary of State, the incorporation becomes complete.    Charters are required to be recorded in the office of the Secretary of State and in the office of the clerk of the chancery court of the county in which a corporation does business.    [Code of Mississippi 1892, chapter 25.]    The second article of association of the Wells Company provided:  ''The capital stock of said corporation shall be $50,000, divided into shares of $500 each, and as soon as $10,000 of said stock is subscribed and paid for, said corporation shall have power to commence business.''    It was the contention of the defendant in that case that the subscription of $10,000 of the capital stock and the payment thereof, was a condition precedent to the company's becoming a corporation; that is, it could not become a corporation

*de jure* until such subscription and payment. And that view was sustained by the Circuit Court of Appeals (128 Fed. 369, 372), but the Supreme Court of the United States on this point said: "We are of the opinion that the Circuit Court of Appeals erred in holding that the charter of the W. L. Wells Company made it a condition of its becoming a corporation that ten thousand dollars of the capital stock should be subscribed and paid for. The question was not as to the good faith of the incorporators, nor whether the company was organized in fraud of the law. Those were not matters to be inquired into in ordinary suits between the company and individuals or incorporators. If the organization of the company as a corporation was tainted with fraud, it was for the State, by some appropriate proceeding, to annul its charter. The question before the court below was whether the company was, technically, a corporation, and that depended upon the legal effect of the words of its charter." But counsel for the plaintiff quote from Judge Harlan's opinion these words: "Of course, if the charter of the company had made it a condition precedent to its becoming a corporation that a certain amount of capital stock should be subscribed and paid for, a compliance with that condition would have been necessary before the company would have become a corporation entitled to sue and be sued in the courts of the United States. . . . It thus appears that the Supreme Court of Mississippi, in the case referred to, decided that where acts are required to be performed before the corporation comes into existence, no corporation is created or can exist until those acts are performed. In this general view we entirely concur." But the learned judge did not stop with the language above quoted, but continued: "But, as we have seen, the charter in question prescribed no such condition. If the Legislature had intended to withhold charter existence until a given amount of capital stock was subscribed

and paid for, that intention, we may assume, would
have been manifested by clear language. We do not
feel at liberty, by mere construction, to qualify the ex-
plicit declaration in the first section of plaintiff's char-
ter as to the corporate existence thereby created. We
therefore hold that under the statutes of Mississippi
the only conditions precedent to the existence of the
corporation were the approval by the Governor of the
State of its proposed charter and the certification of
that approval under the great seal of the State. . . .
The question remains whether the particular charter
here in question made it a condition precedent to the
existence of the W. L. Wells Company as a corporation,
that a certain amount of its capital stock should be
subscribed and paid for. As already indicated, we are
of the opinion that no such condition precedent was pre-
scribed.'' The opinion of the Supreme Court of the
United States in that case is in harmony with the decis-
ion of this court in Railroad v. Shambaugh, 106 Mo.
566, already noted. The language of our own statute
(section 1314) declaring that the corporate existence
shall begin from the issuance of the certificate by the
Secretary of State, is no less explicit than the language
of the charter under consideration in Wells Company
v. Gastonia Company, supra, and there is, in the lan-
guage of Judge HARLAN, no ''clear language'' in the
section, or any of the cognate sections, showing an in-
tention on the part of the Legislature to establish any
other conditions precedent to the creation of the cor-
poration than the certificate of the Secretary of State
prescribed in the section.

In Hastings v. Railroad, 9 Cush. 596, the statute pro-
vided that neither section of the railroad ''should be
commenced until a certificate should have been filed in
the office of the Secretary of the Commonwealth, sub-
scribed and sworn to by the president of said company
and the majority of the directors thereof, stating that all
the stock appropriated and set apart for the construc-

tion of said section had been subscribed for by responsible parties; and that twenty per cent of the par value of each and every share so appropriated and set apart had been actually paid into the treasury of said company."
A petition was filed in that case for leave to file a proceeding in the nature of a *quo warranto* against the further exercise of a franchise of constructing the road. It alleged that the certificate was false and fraudulent; that the pretended subscription was nothing but a false pretense, and that no part of the subscription was actually paid. Chief Justice SHAW rendered the opinion of the court. He said: " This is a franchise granted. But the argument is, that it is granted conditionally, that is, upon conditions that they comply with the requisitions of the law; that these are conditions precedent, and if they are not complied with, the power is not conferred. This assumes several positions, which, to say the least, are doubtful. 1. That they are conditions. 2. That they are conditions precedent. 3. That they are injurious to the petitioner's private right and interest. 1. The statute does not make them conditions, in terms, and there are ample means of enforcing their observance, without holding all the proceedings void, if not complied with. They may be directory. . . . But we are then to consider another point which is preliminary, and that is, the certificate required by the fourteenth section. This provision renders it less necessary to construe these requisitions about stock as suspensive conditions. This section provides that before they proceed to commence the construction of the road, on the section now in question, a certificate shall be filed, etc. This carries a strong implication, that when such certificate is filed, they may commence, etc., still remaining liable in other respects to the requisitions and the particular provisions of their act of incorporation, and the general laws referred to and adopted by it."

In Rice v. National Bank of the Commonwealth,

126 Mass. 300, GRAY, Chief Justice, in a case in which it was charged that the certificate of corporate existence was obtained by fraud, said: "But it shows that those persons complied with all the forms prescribed by the statute for the organization of corporations and obtained a certificate under the seal of the commonwealth which by the express terms of the General Statutes of 1870, chap. 224, sec. 11, 'Shall have the force and effect of a special charter, and be conclusive evidence of the organization and establishment of such corporation.' It thus appears on the face of the information that the franchise of being a corporation was conferred upon the defendants by law. The defendants having thus once become a legal corporation, their franchise, by the general principles of law, . . . . could be avoided, annulled, revoked or forfeited only by the Legislature, or at the suit of the Commonwealth or of the Attorney-General representing the Commonwealth, and not upon the application of private individuals."

Thompson on Corporations, vol. 6, sec. 7709, says: "A certificate of incorporation, filed according to the provisions of a general corporation law, constitutes conclusive proof as to the regularity of the incorporation. If there is any fraud in the recitals of the certificate, the corporation may be ousted at the suit of the State; or possibly creditors who have been deceived by the fraud may have an action against the guilty parties. But the *de facto* existence acquired by the corporation, under such a certificate, is sufficient to enable it to act as a corporation, and acquire rights and incur liabilities as such, which will be enforced in the judicial courts."

In Palmer v. Lawrence, 3 Sandf. (N. Y.) l. c. 168, Judge DUER among other things said: "This certificate made and filed by the associates was in exact conformity to the terms of the statute. It contained all the particu-

lars that the law requires to be inserted; it was duly acknowledged and recorded in the county clerk's office, and a copy duly filed in the office of the Secretary of State, and the seventeenth section of the act declares that every such certificate, or copy, properly certified, may be used as evidence for and against the company in all courts and places whatever.     Evidence of what? Plainly, evidence of the truth of the facts that it recites; evidence, therefore, that the provisions of the act had been complied with, and that the company was duly organized. . . . If there were any illegality or fraud in its organization—if, from inadvertence or design, any of the material facts set forth in the certificate were untrue—the association may undoubtedly be dissolved by the action of the sovereign power of the State; but as between the company and individuals, no evidence of such illegality or fraud can be given, in order to invalidate its certificate and disprove its legal existence or title; no individual who had dealt with the company is permitted to say that it had no authority to contract and no capacity to sue." To the same effect is Cochran v. Arnold, 58 Pa. St. 399.

In  Laflin  &  Rand  Powder  Company v. Sinsheimer, 46 Md. 315, it was sought to hold as partners the incorporators of a West Virginia corporation, because the capital had not been paid. The court in holding that there was no liability as partners said: "We have carefully compared the certificates of its incorporation, authenticated by the Secretary of State and the seal of West Virginia, with the requirements of the laws of that State, and we find that it is in all respects in matter of form in accordance with their provisions. [Code of West Virginia, chap. 54, secs. 6, 7, 8, 9, and 10, and chap. 53, sec. 62.] . . .   Can the validity of its incorporation be attacked in this suit, by proving *aliunde* the certificate of its incorporation, that certain prerequisites of the law had not been in good faith complied with? We have found no case which has

allowed this to be done in a collateral proceeding such as the present. The rule seems, from all the authorities, to be well established, that the courts are bound to regard a company incorporated according to all the required forms of law, as a corporation, so far as third parties are concerned, until it is dissolved by a judicial proceeding on behalf of the government that created it." [See, also, Eaton v. Aspinwall, 19 N. Y. 119; McFarlan v. Triton Ins. Co., 4 Denio 392; Kansas City Hotel Co. v. Hunt, 57 Mo. 126.]

From the foregoing authorities, it appears that the failure of Rockefeller and Matchette to acknowledge the articles of association, and the failure of the incorporators to pay for their capital stock into the treasury of the company, or to the directors of the company at the time of filing the articles, or at the time of the issuance by the Secretary of State of his certificate of incorporation, did not have the effect to nullify the certificate of the Secretary of State granting the Siegel-Sanders Live Stock Commission Company, the right or franchise to be corporation. By the express language of the statute (sec. 1314), when the certificate was issued the said company became a *de facto* corporate body under the laws of this State and the failure of two of the incorporators to acknowledge the articles of association and the failure of the corporation to pay into the treasury, or to the first board of directors, the amount of the stock subscribed for by them in lawful money, cannot be assailed by the plaintiff in this case in this collateral way, but said company was and has been a corporation *de facto* since the issuing of the certificate by the Secretary of State and must remain so until it is dissolved by judicial proceeding on behalf of the State.

The principles upon which this conclusion is based and upon which the cases cited, as well as numerous others, rest, are nowhere better stated than by Mr. Justice COOLEY in Swartwout v. Railroad, 24 Mich. 389.

The authorities are too numerous and it will unnecessarily extend the length of this opinion to make extracts from them. We must content ourselves with citing only a number of the leading cases which sustain the views we have expressed. [Duggan v. Colorado M. & I. Co., 11 Colo. 113; East Norway Church v. Froislie, 37 Minn. 447; Doty v. Patterson, 155 Ind. 60; Johnson v. Okerstrom, 70 Minn. 309; Stout v. Zulick, 48 N. J. L. 599.]

II. But for the purpose of holding the incorporators liable as copartners it is further alleged that the certificate of incorporation obtained by the defendants from the Secretary of State was obtained by fraud and deceit; that the Secretary of State was not informed by defendants and Askew, or by any of them, at the time of obtaining said certificate of incorporation from the Secretary of State, of the non-payment of their capital stock, and of the agreement that the same should not be paid, and that the Secretary of State was not informed that the articles of association were not acknowledged before the filing thereof by the defendants Frank Rockefeller and E. E. Matchette, and that, therefore, the obtaining of the certificate of incorporation by defendants was fraudulent, null and void as to all persons who should thereafter deal with and did deal with said company, but that said company by reason of said fraudulent acts was and is a partnership. It thus appears that the plaintiff is seeking in this collateral proceeding to hold defendants as copartners for the alleged frauds in obtaining their certificate of incorporation. But the authorities already cited all agree that for fraud practiced in obtaining a certificate of incorporation, the State alone, by a direct proceeding, can annul and forfeit the charter of the company. [Palmer v. Lawrence, 3 Sandf. (N. Y.) 161; Cockran v. Arnold, 58 Pa. St. 399; Kayser v. Trustees of Bremen, 16 Mo. 88; Wells Co. v. Gastonia Co., 198 U. S. 177; Laflin & Rand Powder Co. v. Sinsheimer, 46 Md. 315;

Rice v. National Bank of the Commonwealth, 126 Mass. 300.] While the plaintiff has made a general charge in the petition that the capital stock of said company was never in fact paid up, this allegation is followed with specific allegations carefully guarded that the capital stock of the several incorporators was unpaid at the time of the issuing of the certificate of the Secretary of State, and taking all the allegations of the petition together, we do not think they can be fairly construed to charge that as a matter of fact the stock had not been paid since the date of the certificate. *Non constat* it may have been paid in full at the time of the organization of the company by the meeting of the directors and the election of officers, including a treasurer. Conceding that the statement in the articles that the whole amount of the capital stock was in the hands of the persons named as the first board of directors, was not true, still it does not follow that the stockholders can be held liable in this action as copartners. Nor does it follow, because the amount of the stock subscribed was not actually paid into the hands of the first board of directors at the time of the filing of the articles of association and the obtaining of the certificate of the incorporation from the Secretary of State, that, therefore, the subscribers for that stock were not liable for the amount of their several subscriptions. In Hequembourg v. Edwards, 155 Mo. 521, it was held that a corporation may sue a stockholder to recover a balance due on his stock subscription made in contemplation of the incorporation and the assignee of an incorporation may maintain such a suit. [Shockley v. Fisher, 75 Mo. 498; Haskell v. Worthington, 94 Mo. 560.] But it is obvious that those cases proceeded on the assumption that there was in fact a *de facto* corporation and the parties were sought to be charged as stockholders or directors, whereas in this case, the plaintiff proceeds on the theory that there was and is no corporation, and seeks to hold the defendants on an

unlimited liability as copartners. Counsel for the plaintiff urges upon our consideration the provision of section 8 of article 12 of the Constitution of 1875, which provides: "No corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void," and section 962, Revised Statutes 1899, which follows the language of the Constitution, and provides that "all fictitious issues or increase of stock or of bonds of any corporation shall be void." We have carefully considered this contention of the learned counsel and are of the opinion that it does not have the effect of making the defendants in this case, under the facts conceded in the petition, copartners, and liable as such. *Ex vi termini* the constitutional provision, as well as the statute passed to enforce it, both proceed upon the assumption of the existence of a corporation, whereas the plaintiff's contention is that there is no corporation in this case. Nothing that we have said is to be taken as giving countenance or toleration to the formation of a business corporation under our laws, except when all the capital stock has been in good faith subscribed, and one-half thereof actually paid into the treasury in money or money's actual equivalent at the time. The payment of stock subscriptions in property at visionary, merely speculative or inflated value, is an abuse of our statutes, and there are penalties and liabilities for such abuses, and this court has always afforded remedies for such abuses. [Van Cleve v. Berkey, 143 Mo. 109; Hequembourg v. Edwards, 155 Mo. 514; Steam Stone Cutter Co. v. Scott, 157 Mo. 520; Shickle v. Watts, 94 Mo. 410; Berry v. Rood, 168 Mo. 316; Shields v. Hobart, 172 Mo. 491.] But in none of these cases did the court proceed upon the theory that the subscribers for stock in an incorporated company were liable as copartners, but the court proceeded upon the ground that under our Constitution and statute, it is

beyond the power of a corporation to issue its stock for less than its par value, and where it does so issue its shares, the subscriber for them or the purchaser of them is liable in a proceeding by or in behalf of the creditors, to make good the difference between their par value and what he actually gives for them. This liability has been enforced either by motions for execution under the statute (section 985), or by a suit under section 987, or by actions by the assignees of the corporation against the stockholders. These statutory provisions and suits in equity to compel subscribers for stock and stockholders to make good the amount subscribed by them, all exclude the idea of a partnership liability. And all are based upon a primary assumption that notwithstanding the stock has not been paid for in full in the first instance, still there was a corporation *de facto* and liability on their part to it as such and to the creditors thereof. As said in Haskell v. Worthington, 94 Mo. l. c. 571, there is a wide difference between the existence of a company as a corporate body and the liability of parties for their subscription to the capital stock. [Hager v. Cleveland, 36 Md. 476.] In this case it appears from the allegations of the petition that the full amount of the capital stock provided in the articles of association was subscribed by the defendants and Askew; under our laws if they have not paid each the amount of stock for which he subscribed, each is liable for the amount unpaid by him on such subscription, but neither is liable for the amount unpaid by any other stockholder. The decision of the Supreme Court of Colorado in Arkansas River Land, etc., Company v. Farmers' Loan & Trust Co., 13 Colo. 587, is not in conflict with the views herein expressed. In that case the parties using the name of the corporation in a suit in equity were shown to have no right whatever to the stock which they had fraudulently issued to themselves, and both the circuit court and the Supreme Court dismissed the bill upon the

maxim "*Ex turpi causa non oritur actio.*" It was not a cause like this in which the stockholders would have been estopped from denying their subscription to the capital of the corporation. Neither is the case of Kellerman v. Maier, 116 Cal. 416, in point. The additional stock issued in that case was wholly without consideration and void under the Code of California, which is in the identical language of our constitutional provision on the subject of fictitious stock, already quoted. The cases of. Cleaton v. Emery, 49 Mo. App. 345, and Davidson v. Hobson, 59 Mo. App. 130, were cases arising under the doctrine of the comity of States, and because in each case the corporations were clearly organized in fraud of our laws, the Court of Appeals held that they were not entitled to be recognized as such under the laws of this State. In both of those cases, it was clearly the purpose of the incorporators to violate the laws of this State, and not only that, in the Cleaton case, the corporation was not formed in compliance with the laws of Colorado; therefore, the court refused to recognize the validity of such corporation saying "that the sole purpose was to avoid the restrictions so wisely engrafted on our corporation law." Neither of those decisions, however, has any bearing upon the questions arising upon this record, and neither is any authority for holding the defendants under the allegations of the petition in this case as copartners.

We have read and considered the briefs in the light of the very able oral argument of the counsel, and our conclusion is without further elaboration and citation of authorities that the judgment of the circuit court in sustaining the demurrer was correct and it is therefore affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.