Drake Hotel Co. v. Crane.

---

# DRAKE HOTEL COMPANY, Respondent, v. W. S. CRANE, Appellant.

### Springfield Court of Appeals, May 8, 1922.

1. **PLEADING:** Testimony not Admitted on Hearing of Demurrer to Pleading. Testimony should not be admitted on the hearing of a demurrer to a pleading.

2. ———: **Demurrer to Amended Answer Considered Without Reference to Original Answer.** Demurrer to amended answer must be considered without reference to original answer.

3. ———: **Demurrer to Answer Overruled, if One of the Defenses is Good.** A demurrer to an answer setting up several defenses should be overruled, if one of the defenses is good.

4. **CORPORATIONS:** That 50 Per Cent. of Capital Stock was not Paid Up at Time of Filing Articles not Ground for Attacking Validity of Incorporation by Party Other Than State. Non-compliance with statute requiring fifty per cent. of the capital stock to be paid up at the time of filing the articles of agreement, does not, of itself, render the incorporation void in a proceeding by a party other than the state.

5. ———: **Non-compliance with Statute Requiring Fifty Per Cent. of Capital Stock to be Paid up on Filing of Articles, no Defense in Action on Subscription.** In action on stock subscription, non-compliance with statute requiring fifty per cent. of capital stock to be

paid up at the time of filing the articles of agreement, *held* not a good defense, in the absence of fraud.

6. ————: That There Was no Meeting of Stock Subscribers to Select First Board of Directors and Arrange for Incorporation, is no Defense in Action on Subscription. In action on stock subscription, that there was no meeting of the subscribers held for the purpose of selecting the first board of directors and arranging for the incorporation of a company, *held* not a good defense.

7. ————: Subscription for Stock to be Paid for in Installments Held Valid; "Note." A promise to subscribe for a certain amount of stock of a corporation to be organized, to be paid for in installments, *held* valid, under Revised Statutes 1919, section 9739, notwithstanding section 10155, prohibiting the payment for stock in corporation by notes of the incorporators; such a subscription not, being a "note," within such statute.

8. ————: Corporation Afterwards Formed Held Entitled to Sue on Prior Stock Subscription, Without Assignment, as Real Party in Interest. In corporation's action on stock subscription, showing on its face that it was made for the use and benefit of the corporation to be subsequently formed, it was no defense that the subscription had not been assigned to the corporation; the corporation being the real party in interest.

9. ————: Construction of Hotel at Cost in Excess of That Provided for by Stock Subscription, Held not to Render Subscription Void. Where subscription for stock of corporation to be organized for the purpose of constructing and equipping a hotel was made prior to the incorporation and for the purpose of assisting in securing the charter from the State, the construction of a hotel at the cost of $200,000, instead of at a cost of $150,000, as provided by the stock subscription, did not render the subscription void.

Appeal from Jasper County Circuit Court.—*Hon J. D. Perkins*, Judge.

AFFIRMED.

*A. L. McCowley* and *Adolph McGee* for appellant.

(1) A general demurrer to a pleading as a whole must be overruled if any count therein states a good cause of action (or defense). Where a demurrer goes to a whole answer, it should be overruled if any matter pleaded in the answer constitutes a defense to the action.

Hallock v. Brier, 80 Mo. App. 331; Darby v. K. Bainey, 1 Mo. App. 126; Ferguson v. Davidson, 65 Mo. App. 193; Eads v. Gaines, 58 Mo. App. 586; Justice v. Town of Lancaster, 20 Mo. App. 559; Mo. Pac. Ry. v. McLinley, 32 Mo. App. 166; Hayden v. Sample, 10 Mo. 215; Burriss v. Edmundson, 71 Mo. App. 172; Bick v. Halberstadt, 110 Mo. App. 441; American Brewing Co. v. City of St. Louis, 187 Mo. 367.    (2)   Pre-organization subscription agreements for the purchase of capital stock of a corporation are subject to the law of contract, as other agreements and an allegation in defendant's answer, that the terms of his subscription certificate have been violated, states a good defense to plaintiff's cause of action.   Met. L. & Z. M. Co. v. Webster, 193 Mo. 351; 2 Thompson on Corporations, par. 1362; Denny v. Kile, 16 Mo. 450; Turner v. Mellier, 59 Mo. 526; Secs. 570, 573, chapter 17, volume 2, Fletcher's Cyclopedia; Billups v. Daggs, 38 Mo. App. 367; Southern Lumber Co. v. Lumber and Supply Co., 89 Mo. App. 141.   (3)   The capital stock of a Missouri corporation cannot be paid up with the promissory notes of its corporations.   A promissory note to the corporation or to trustees for the benefit of the corporation about to be organized, is illegal and void and a proper defense to an action by the corporation to enforce payment thereon.   Secs. 10144, 10155, R. S. 1919; 14 C. J. page 431, par. 594, page 549, par. 818; Sec. 320, chapter 10, Vol. 1, Fletcher's Cyc.; Secs. 528 and 586, chapter 17, vol. 2, Fletcher's Cyc.   (4)   An allegation in defendant's amended answer, to the effect that statements made in the articles of agreement for the incorporation of the plaintiff as to material specifically required by statute as condition precedent to the granting of its corporate charter were false and fraudulent and that its charter was obtained through false and fraudulent representations made in said articles of agreement, states a valid defense to an action to enforce payment of a subscription to its capital stock.   Todd v. Ferguson, 161 Mo. 624; Occidental Insurance Co. v. Ganshom, 2 Mo. App. 205; Met. Lead & Zinc M. Co.

v. Webster, 193 Mo. 351; Wells v. Jones, 41 Mo. App. 1; Bank v. Keith, 85 Mo. App. 411; Montgomery v. Tipton, 1 Mo. 447; Pemberton v. Staples, 6 Mo. 60; Sec. 8, article 12 Constitution of Missouri; Sec. 320, chapter 10, vol. 1, Fletcher's Cyc.; Sec. 9740, article 1, R. S. 1919.

*Bailey & Bailey* for respondent.

(1) Defendant's amended answer denies each and every allegation in plaintiff's petition contained except such as are specifically admitted and then sets up certain specific defenses. Such answer does not plead the General Issue and the only issues tendered by such an answer are the affirmative defenses set up. Hardin v. Railroad, 248 Mo. 669; Long v. Long, 79 Mo. 649; Long v. Coal Co., 233 Mo. 732; State ex inf. v. Jockey Club, 200 Mo. 63. (2) The condition in the stock subscription agreement as to the cost of the hotel building was not a condition precedent to liability thereon, but only a matter of internal economy in the management of the funds of the company. McGinnis v. Kortkamp, 24 Mo. App. 378; 7 R. C. L., pp. 228, 229, 230. (3) The certificate of incorporation issued by the secretary of state to a corporation is a final determination of its rights to do business, and thereafter no one, except the State by a direct proceeding can question its corporate existence. First National Bank v. Rockefeller, 195 Mo. 15; Boatman's Bank v. Gillespie, 209 Mo. 217; Brown v. Webb, American Ann. Cases 1914A. 148; 14 Corpus Juris, p. 148; 7 Ruling Case Law, pp. 68 and 107; School District No. 35 v. Hodgin, 180 Mo. 78. (4) A party for whose use a contract is made, based on a valid consideration, and this appearing on the face of the contract, may sue thereon. Flanigan v. Hutchison, 47 Mo. 237; Armstrong v. School District, 28 Mo. App. 181.

COX, P. J.—Action upon a subscription of appellant to the capital stock of respondent. A demurrer to the answer of defendant was sustained and he refusing to plead further judgment went against him and he has appealed.

The stock subscription signed by defendant was copied in full in the body of the petition filed by plaintiff and contained the following provisions: "I hereby promise to pay E. B. Jacobs, H. M. Boggess, F. B. Williams, W. E. Carter and J. C. Wyatt, trustees for the purpose hereinafter mentioned the sum of One Thousand Dollars ($1000); 20% of said sum to be paid on or before October 15, 1919, the balance to be paid as follows: November 15, 1919, $200; December 15, 1919, $200; January 15, 1920, $200; February 15, 1920, $200. This obligation is made and entered into upon the following express conditions, viz:

"First: That all money paid hereon shall be used to provide grounds, build and equip a modern hotel at a cost of One-Hundred-Fifty-Thousand ($150,000) Dollars. . .

"Second: That this is one of several obligations given for the same purpose and this obligation shall cease to be binding on the undersigned in the event that an aggregate amount of Fifty-Thousand ($50,000) Dollars of said obligation shall not be secured on or before October 15, 1919.

"Third: That the said trustees to carry out the purpose of this obligation are expressly vested with all the rights of a holder for value in due course of business and that this obligation is made and given to induce the building, equipping and operating of a modern hotel in Carthage, Missouri, and to induce other persons to make similar obligations.

"Fourth: That as soon as Fifty-Thousand ($50,000) Dollars in amount of said obligations including this one shall have been secured, a meeting of all obligors shall be called and a hotel corporation organized with a capital stock of at least Seventy-Five-Thousand ($75,000) Dollars, the said trustees shall thereupon assign and deliver to said hotel corporation this obligation and all money paid or collected hereon and all rights herein and money collected and paid hereon shall be vested in said corporation and this obligation shall be taken

and treated as a subscription to the capital stock of said corporation as well as a promise to pay the amount of this obligation and the issue and delivery to the undersigned, his heirs or assigns, of the capital stock of said corporation equal at par to the face of this obligation or the amount paid hereon is acknowledged as value received for this obligation and all sums to be paid hereunder . . .''

The petition then alleged that more than $50,000 of said obligations had been secured prior to October 15, 1919. That thereafter all stock subscribers including defendant were notified of a meeting to be held for the organization of a hotel company. That it was organized and all the subscribers including defendant signed and acknowledged the Articles of Association and on the —— day of December, 1919, the company received its charter from the State. That replying on the subscription of defendant and others, the company had expended large sums of money in incorporating the company and in the construction of a hotel in the City of Carthage, Missouri, and had entered into contracts and incurred liabilities to a large amount. That the subscription contract signed by defendant had been assigned to plaintiff. That plaintiff had offered to deliver to defendant a stock certificate for $1000 of plaintiff company and demand made for payment by defendant of his stock subscription.

The defendant filed an answer on June 15, 1921, in which a copy of the Articles of Association with the names of those who had signed it was set out. This contained the name of defendant as one of the parties who had signed it. Plaintiff then filed a demurrer to this answer which is not shown by this record to have been passed upon. Defendant, however, filed an amended answer on June 25, 1921, and to this a demurrer was filed and sustained which led to this appeal. When this demurrer was being considered, the court suggested that the plaintiff offer in evidence the original answer filed by defendant. This was done and the demurrer

to the amended answer then sustained. The practice of calling for or admitting testimony on the hearing of a demurrer to a pleading is not to be permitted and hence the demurrer to the amended answer must be considered without any reference to the original answer.

The amended answer contained a denial of all allegations of the petition not specifically admitted. It then admitted that defendant had signed the subscription certificate as alleged in the petition but denied that the plaintiff had complied with the terms of said subscription certificate.

As a further answer, it was alleged that after defendant's subscription which provided for the building of a hotel to cost $150,000, arrangements had been made and carried out to errect a building to cost $200.000, and that by reason of the increased cost of the building it could not be leased for a rental sufficient to yield a reasonable return on the cost of the building and as a result, his stock was rendered worthless and the consideration therefor had wholly failed.

Further alleged that the subscription was void in that it was an agreement to pay for stock in the corporation by the notes of the incorporators in violation of the statute, section 10155, Revised Statutes 1919.

Further that the charter of plaintiff was procured through false and fraudulent representations in the articles of agreement of the incorporators in this; that the $75,000 or more than 50% of the authorized capital of the alleged corporation was not actually paid up in lawful money or in property of the full value thereof at or before the filing of the said articles of agreement nor was it in the custody of the persons named as the first board of directors as required by the statutes.

Further that the persons named in the articles of agreement as having been agreed upon as directors for the first year were not elected or agreed upon at any meeting of the subscribers and that no meeting of said subscribers was ever called or held. That by reason of said false and fraudulent statements and representa-

tions in the procurement thereof, the charter of said corporation constitutes a fraud upon the public.

If any one of the matters set up as a defense would, if proven, constitute a valid defense to this action, the demurrer thereto should have been overruled but if neither of the alleged defenses are good in law, then the court was right in sustaining the demurrer. This proposition needs no citation of authorities to sustain it.

The appellant has cited us to the case of Lead & Zinc Mining Company v. Webster, 193 Mo. 351, 92 S. W. 79, and other cases where the organization of the corporation was conceived in fraud and while a certificate of incorporation had been secured, yet the corporation had no assets and was nothing but a paper corporation and in addition to that the subscriber had been induced by fraud to sign a stock subscription, as authority for his charge in the answer as a defense in this case that the certificate of incorporation was procured by fraud. The answer of defendant in this case does not bring it within the rule announced in the cases cited. There is no allegation in this answer that the organization of this corporation was fraudulently conceived by promoters for the purpose of deceiving the defendant and others nor that he was induced by fraudulent representations to subscribe for stock. As far as this answer goes, the purpose of all the subscribers was as honest as his own. The subscriptions signed by all the parties were the same and bear on their face a declaration that the purpose which animated all of them was the very worthy one of trying to induce the building and equipping of a modern hotel in the city where they lived. The only pretense of an allegation of a fraud upon the State or the public is found in the allegation that fifty per cent. of the capital stock was not paid up at the time of filing the articles of agreement as required by the statute. A failure to comply with this provision of the statute would furnish a ground upon which the State might have proceeded to

annul the charter, but, standing alone, does not of itself render the incorporation void nor furnish any ground for attacking the validity of the incorporation by any one other than the State. [1st Nat'l Bank of Deadwood, S. D. v. Rockefeller, 195 Mo. 15, 93 S. W. 279; Boatmen's Bank v. Gillespie, 209 Mo. 217, 263, 108 S. W. 74.]

Without discussing at lenght the facts in these cases, suffice it to say that the actions were by creditors of the corporation who were seeking to hold the incorporators personally liable because of failure to comply with the law in forming the corporation and it was there held that the validity of the incorporation after the certificate of incorporation had been issued by the Secretary of State could only be attacked by the State in a direct proceeding for that purpose and refused recovery by the plaintiffs. These cases are squarely in point with this case and are clearly distinguishable from the case of Lead & Zinc Mining Co. v. Webster, supra, so strongly relied on by appellant.

The other allegations of the answer that no meeting of the subscribers was held for the purpose of selecting the first board of directors and arranging for the incorporation of the company cannot be made a matter of defense to an action to collect a stock subscription. If there were a violation of the provisions of the stock subscription by part of the subscribers proceeding to organize the corporation without giving the defendant an opportunity to have a voice in the selection of the first board of directors, his remedy, if he has any, is not available as a defense to this action.

We do not think the allegation that this stock subscription is an effort to evade the statute which forbids the corporation accepting the note of a stock purchaser in payment for stock sold to him is available here. This subscription is not a note. It is a subscription for stock to be paid in installments which is specifically authorized by statute. [See sec. 9739, Revised Statutes 1919.]

The allegation that the stock subscription had not been assigned to the corporation does not state a defense. The subscription shows on its face that it is made for the use and benefit of the corporation as soon as it should be formed. The trustees named in the subscription paper were holding the subscriptions for the benefit of the corporation to be formed and when the corporation was formed, the beneficial interest in the stock subscription passed by the terms of the subscription itself to the corporation. The corporation was, therefore, the real party in interest and as such was the proper party to sue to recover the unpaid subscriptions. [1st Nat'l Bank of Mexico v. Ragsdale, 158 Mo. 668, 59 S. W. 987.]

It is contended that the provision in the stock subscription that it was for the purpose of erecting and equipping a hotel to cost $150,000 was a condition precedent and when the change was made and a hotel built at a cost of $200,000, that rendered the subscription void and unenforceable. This contention rests on the proposition that contracts of subscription to stock in a corporation are subject to the law of contracts the same as other agreements and the corporation or other party suing on a stock subscription contract containing conditions precedent must allege and prove a compliance with its terms the same as would be required in a suit upon any other contract and an allegation in an answer that the conditions precedent of the contract had not been complied with states a good defense. Generally speaking this proposition is correct but as to what will constitute a condition precedent there is a clear distinction between stock subscriptions made prior to and for the purpose of securing the issuance of a certificate of incorporation and subscriptions that are made after the certificate of incorporation has been issued.

It is generally held that a provision in a stock subscription made before the corporation is organized and with a view of securing a legal incorporation which provides what shall be done or how the money shall be expended after the corporation is formed is not a valid

condition precedent and such a subscription is to be regarded as an absolute one. In discussing the effect of condition or provisos in stock subscription contracts made before, and with view to, the formation of a corporation, we find in Fletcher's Cyc., Vol. II, sec. 576, the following: ''According to the overwhelming weight of authority when a special charter or a general enabling act authorizes the formation of a corporation expressly or impliedly requires as a condition precedent to incorporation or the exercise of corporate powers that the entire authorized capital stock or a certain per cent. thereof shall be subscribed for, it contemplates and impliedly requires that the subscription shall be absolute and unconditional and subscriptions cannot be made upon condition precedent.'' Many cases are cited to support the text. The author then proceeds to say ''the reason for this doctrine is that the Legislature in requiring all or a certain part of the authorized capital stock to be subscribed before organization or before the exercise of corporate powers does so to protect the public against corporations which might otherwise undertake to do business and contract debts without the means of paying them.'' The doctrine there enunciated is clearly stated and fully recognized by the U. S. Supreme Court in Burk v. Smith, 16 Wall, 390, 21 L. Ed. 361. The answer admits that the stock subscription set out in plaintiff's petition was signed by him as alleged in the petition. From this and the further allegations of the answer, it appears this subscription of appellant was made prior to the incorporation and for the purpose of enabling the corporation to secure a charter or certificate of incorporation from the State. Every consideration of public policy upon which is based the provision of the statute requiring at least 50% of the stock to be paid before a certificate of incorporation shall issue will apply with equal force to prevent the dissipation of the funds of the corporation and the thwarting of the purposes of its organization by permitting subscribers to its stock to refuse to pay for their stock because the corporation

MARCH TERM, 1922.        463

after its organization did not use the funds of the corporation as the stock subscription contract entered into prior to the incorporation had provided they should be used. This doctrine has been upheld in this State when the stock subscription was made after the corporation had been organized. [McGinnis v. Kortkamp, 24 Mo. App. 378.]

For a much stronger reason should it be upheld when, as in this case, the subscription was made prior to the incorporation and for the very purpose of assisting in securing the incorporation. If the funds of the corporation have been diverted from their legitimate use, the remedy of appellant, if he has any, a question which we do not decide, is the same as that of any other stockholder but he cannot use that as a defense in this action. The judgment is affirmed. *Bradley, J.,* concurs; *Farrington, J.,* not sitting.