## MORRISON et al. v. ROCKHILL IMPROVEMENT CO. et al.
### No. 1512.

Circuit Court of Appeals, Tenth Circuit.
Aug. 10, 1937.

Rehearing Denied Sept. 21, 1937.

Walter W. Blood, of Denver, Colo., for appellants.

A. R. Morrison, of Denver, Colo. (Halbert H. McCluer, of Kansas City, Mo., on the brief), for appellee Rockhill Improvement Co.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This appeal challenges an order made in a proceeding under section 77B of the Bankruptcy Act. 11 U.S.C.A. § 207.

In 1923, William N. Bowman and wife executed their negotiable bonds in the aggregate principal sum of $350,000; and for the purpose of securing payment, they executed a deed of trust to the International Trust Company, as trustee, covering certain premises including apartments and a garage connected therewith, situated in the city of Denver. The Norman Apartments, Inc., subsequently acquired the premises, assuming the unpaid bonds as part of the transaction. The apartments company later issued its negotiable bonds in the aggregate principal sum of $60,000 and executed a junior deed of trust on the premises to secure them. By payments, the first bonds were reduced to $244,000 and the second to $49,-000. Default was made in payment of the first bonds and a protective bondholders' committee was formed, consisting of C. L. Holman, Lynton T. Block, Warren Browne, A. D. Plamondon, and James R. D. Stevenson. On October 12, 1932, the apartments company and the bondholders' committee entered into a written agreement in which it was provided that all rentals and income from the property should be deposited in the Colorado National Bank; that such money should be checked out and used (1) to pay current operating expenses, (2) to pay taxes and special improvement assessments, and (3) the balance, if any, to be paid to the trustee under the first deed of trust for the benefit of the bondholder beneficiaries; and that such money could be withdrawn for such purposes only upon checks signed jointly by B. F. Englander, resident manager of the apartments as representative of the apartments company, and W. D. Morrison as representative of the bondholders' committee.

In November, 1932, the International Trust Company instituted an action in the district court of the county of Denver, to foreclose the deed of trust securing the first bonds. The apartments company, the bondholders' committee, all holders of first bonds, the trustee under the second deed of trust, all holders of second bonds, and all others having any interest in the property were joined as defendants. A combined judgment and decree was entered on July 15, 1935, in which the court expressly found that upon the execution of the contract of October 12th, the apartments company agreed to surrender and did surrender the possession of the property to the bondholders' protective committee; that the committee accepted such possession and ever since had been and then was in the open, notorious, and exclusive possession thereof, especially for the purpose of collecting the rents and of making application of them in accordance with the terms of the contract; and that such possession was rightful, lawful, and proper and for the best interest and protection of the property and of the bondholders' beneficiaries. The judgment was for $313,132.35, the amount then due on the unpaid bonds. By the terms of the decree, the deed of trust was foreclosed; a special master was appointed to sell the property; minimum or upset prices of sale were fixed of $150,000 to include the rents and use dur-

ing the period of redemption or until redemption be made, or $140,000 without such rents and use; the bondholders' committee, or its successors or assigns, was awarded possession of the premises and declared entitled to conduct the business during the period of redemption, unless otherwise ordered; and, until otherwise ordered, jurisdiction of the cause and the parties was reserved for all purposes, particularly for the future adjudication of all questions of which disposition was not then made. The property was advertised for sale on August 19th, but there were successive adjournments to September 6th and 21st.

On September 20th, the apartments company filed its petition in this proceeding for reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). The court immediately entered an order approving the petition; enjoining the threatened sale; appointing the referee in bankruptcy as special master; directing that upon application and written petition of the International Trust Company, trustee, or of holders of bonds, the master determine within twenty days whether the sale should be further restrained; and further directing that the master hold a meeting to determine whether the debtor should remain in possession of the property, whether a trustee should be appointed, to fix the time for the filing of a plan of reorganization, and for other purposes. The master entered an order on October 15th, dissolving the temporary order restraining the sale, but providing that the property should nevertheless be subject to the jurisdiction of the bankruptcy court and the further orders thereof; that there should be no change of possession and management of the property; that instead, the possession and management under and pursuant to the contract of October 12, 1932, should continue until the further order of the court or of the master.

After the restraining order had been thus dissolved, the special master of the state court sold the premises on October 14th to Holman, Block, and Browne, as joint tenants and not as tenants in common, for $164,000. The sale included the rents and use of the property during the period of redemption or until redemption be made, after payment of operating expenses and payment of taxes and special assessments under and pursuant to the contract made in 1932. The order confirming the sale, entered November 26th, provided that the bondholders' committee was authorized and directed to pay to the

trustee all money held by it under the contract including all net rents collected or to be collected for the period ending November 30th; that the trustee was authorized and directed to receive such money and to distribute it pro rata among the holders of bonds; that upon receipt of such money the trustee was authorized and directed to release, and the bondholders' committee was authorized and directed to assign to the purchasers at the sale, all their interest in the contract to the net rents, issues, and profits accruing from the property on and after December 1, 1935, during the period of redemption or until redemption be made.

The special master issued a certificate of purchase in due course. On May 27, 1936, Rockhill Improvement Company, owner of a part of the second bonds, redeemed the property by paying the special master $168,-947.35—the amount of the purchase price with accrued interest thereon. A certificate of redemption was duly issued and placed of record. The rentals accruing intermediate confirmation of the sale and redemption of the property, deposited in the special account in the bank, were in excess of $10,000. Holman, Block, and Browne, as purchasers at the sale, and Rockhill Improvement Company, as redeeming creditor, each asserted ownership of the fund. Rockhill Improvement Company filed its petition in the court below praying that there be an accounting of the rents accruing since the date of sale and that upon such accounting being had, Englander and Morrison be required to pay it the net profits by drawing their check therefor on the bank. Holman, Block, and Browne were not expressly named in the petition. On August 19th notice was served on the International Trust Company, the bank, Englander, Morrison, and the apartments company that the petition would be presented to the special master on the 21st. On the intervening day, Holman, Block, and Browne telegraphed their attorney in Denver to cancel the authority of Englander and Morrison to draw checks on the fund and to withdraw the balance in the bank, less the amount of outstanding checks against it drawn by Englander and Morrison. Pursuant to such direction, the attorney presented a check for the net amount; the bank paid it by the issuance of its cashier's check, and the cashier's check is in the custody of the attorney.

Reciting that they appeared specially for that purpose, the bank and Morrison filed written objections to the petition, in which

the jurisdiction of the court to determine the questions was challenged. The special master overruled the objections, but gave counsel for such parties permission to participate in the hearing as amicus curiæ. An order was entered awarding the rentals in question to Rockhill Improvement Company as the redeeming creditor, directing Englander and Morrison to draw their joint check for the amount and commanding the bank to pay it upon presentation. On review, the court confirmed the order. Morrison and the bank appealed. Englander refused to join.

The order in question relates to "a controversy arising in a bankruptcy proceeding" reviewable on appeal perfected in accordance with section 24a of the Bankruptcy Act (as amended 11 U.S.C.A. § 47(a). Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897; Marcell v. Engebretson (C.C.A.) 74 F.(2d) 93.

Several questions are argued. One seems to be decisive and eliminates need to discuss the others. The debtor in this proceeding delivered the property into the possession of the bondholders' committee on October 12, 1932, and the committee retained such possession thereafter. The state court so determined in the foreclosure suit prior to the institution of this proceeding. The committee, not the debtor, had possession at the time the petition for reorganization was filed; and under the terms of the contract, the income from the property was deposited in the bank as agreed custodian to be disbursed (1) in payment of current operating expenses, (2) in payment of taxes and special assessments, and (3) the balance, if any, to the trustee under the first deed of trust for the benefit of the holders of bonds. Upon reaching the bank, it was beyond the custody or control of the debtor. The debtor was never entitled to it thereafter. In substance and essence, the controversy presented concerns the rights of the purchasers at the foreclosure sale on one hand, and the redeeming creditor on the other to the net rentals which accrued after confirmation of the sale and prior to redemption of the property. The bank and Morrison seriously assert that the fund is the property of the purchasers at the sale; that no notice or other process has been served upon such purchasers and for such reason they would not be bound by the order; and that if Morrison is required to draw the check and the bank is required to pay it, they would be thereafter liable to such owners. Rockhill

Improvement Company contends with equal vigor that under the law of Colorado redemption of the property carried with it title to the fund. We do not pass upon these contentions. It is enough to say that each is substantial, not merely colorable. In the absence of consent of all adverse claimants, the bankruptcy court was without jurisdiction to adjudicate the controversy in a summary proceeding. Louisville Trust Co. v. Comingor, 184 U.S. 18, 22 S.Ct. 293, 46 L. Ed. 413; Taubel-Scott-Kitzmiller v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770; May v. Henderson, 268 U.S. 11, 45 S.Ct. 456, 69 L.Ed. 870; Harrison v. Chamberlin, supra; Marcell v. Engebretson, supra; Megan v. Continental Illinois Nat. Bank & Trust Co. (C.C.A.) 86 F.(2d) 508; In re Patten Paper Co. (C.C.A.) 86 F.(2d) 761. Instead, resort must be had to a plenary action— either the exertion of the reserved jurisdiction of the state court in the foreclosure suit, or in another appropriate forum.

The order is reversed and the cause remanded for further proceedings not inconsistent with this opinion.