**SYLVAN BEACH, Inc., v. KOCH et al.**

**PETERS et al. v. SAME.**

**PETERSEN v. SAME.**

**PEVELY DAIRY CO. v. SAME.**

Nos. 12577–12580.

Circuit Court of Appeals, Eighth Circuit.

Feb. 25, 1944.

854

Harry S. Gleick, of St. Louis, Mo. (Gleick & Strauss, of St. Louis, Mo., on the brief), for appellant Sylvan Beach, Inc., in No. 12577, and for appellants L. W.

Peters, Ralph L. Peters, A. H. Peters, C. Lew Gallant and William Faisst, in No. 12578.

Charles D. Long, of St. Louis, Mo. (Frederick A. Judell and Rassieur, Long & Yawitz, all of St. Louis, Mo., on the brief), for appellant A. L. Petersen, in No. 12579.

William H. Allen, of St. Louis, Mo., for appellant Pevely Dairy Company, in No. 12580.

George O. Durham, of St. Louis, Mo. (Douglas H. Jones and Barak .T. Mattingly, both of St. Louis, Mo., on the brief), for appellees Kenneth Koch and Richard Dalton, trustees.

Douglas H. Jones, of St. Louis, Mo. (Barak T. Mattingly, of St. Louis, Mo.' on the brief), for appellees Frank S. Wiemeyer and Ethel L. Wiemeyer.

Before SANBORN and WOOD-ROUGH, Circuit Judges, and HULEN, District Judge.

SANBORN, Circuit Judge.

These appeals challenge the "findings, conclusions and judgment" of the District Court entered December 5, 1942, in a proceeding for the reorganization of Sylvan Beach, Inc., under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The "judgment" actually consists of several judgments determinative of distinct controversies thought by the District Court to be germane to the reorganization proceeding.

Broadly stated, the principal questions presented are: (1) Whether, after dismissing the proceeding, the court had power to adjudge that the debtor, Sylvan Beach, Inc., was a partnership and to enter money judgments against the persons found by the court to be partners and in favor of persons to whom they were found to be indebted; (2) whether the court, after having authorized the temporary trustee of the debtor to borrow money on certificates of indebtedness, could dispose of all of the assets of the insolvent estate without notice to a certificate holder and without making any provision for the payment of the unpaid certificates out of the estate; and (3) whether the court, in dismissing the proceeding, was required to conform to the provisions of § 236(2) of the Bankruptcy Act, 11 U.S.C.A. § 636(2), which, in effect, require that if no plan of reorganization is approved or accepted, the

judge shall, after hearing all persons in interest, adjudge the debtor a bankrupt or dismiss the proceeding as he may decide is in the interests of creditors and stockholders.

While the attacks upon the "judgment" raise mainly questions relating to jurisdiction and to due process, we find it impossible to avoid a somewhat detailed statement of the facts.

Sylvan Beach, Inc., the debtor, was incorporated under the laws of Missouri in April, 1932, for the purpose of leasing a tract of land consisting of about 32 acres on the Meramec River near St. Louis, Missouri, and of operating an amusement park thereon.[1]

On April 26, 1932, the debtor leased the land from Frank S. Wiemeyer and Ethel L. Wiemeyer, his wife, for the term of ninety-nine years, at an annual net rental of $5,000, payable in equal quarterly instalments. The lease provided that, in case of a default in the payment of rent or in other conditions of the lease, it might, upon notice, be declared forfeited. A restaurant, swimming pool and bath house were built upon the land, and other improvements were made. The park was opened for business about July 4, 1932. The debtor had little, if any, cash or credit, and Louis W. Peters, its promoter and president, was in substantially the same situation. The venture was not profitable, and rents due under the lease were frequently in default, and creditors accumulated. In the fall of 1934, the Wiemeyers brought a suit to cancel the lease, but before it came to trial, the debtor, on March 14, 1935, filed a petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. This proceeding was dismissed on June 6, 1935, by agreement between the debtor and most of its creditors. This agreement resulted from an arrangement made by the debtor with the Farmers and Merchants Bank of Fenton, Missouri, and with Kenneth Koch, a director of the bank, and Richard Dalton, its cashier. The bank loaned the debtor $7,000 to enable it to pay $5,900 delinquent rent to the Wiemeyers and to meet other obligations, the payment of which could not be postponed. The debtor gave to the bank and all other creditors notes payable on or before October 15, 1938. To secure the payment of these notes and to provide management for the business of the debtor satisfactory to the bank and the other creditors, the debtor on May 31, 1935, executed a deed of trust conveying all its property to Koch and Dalton, as trustees, with the right to take possession of and to operate the business until October 15, 1938, unless the notes and obligations secured by the deed of trust should be paid before that time either by the debtor or out of the proceeds of the business. The deed of trust provided that if all the secured obligations were not paid by October 15, 1938, the trustees might foreclose. Profits from the business, if any, were to be applied by the trustees first upon the note to the bank, and, when that was paid, upon the other notes.

Koch and Dalton, as trustees, took over the property and business of the debtor in accordance with the terms of the deed of trust, and conducted the business until July 30, 1938. While they were in possession they paid the rent, taxes and all of the

---

[1] The incorporators were Louis W. Peters, Ralph L. Peters, E. R. Breneman, P. M. Perkinson, Frank S. Wiemeyer, C. Lew Gallant and Michael J. Carroll. The articles of incorporation were dated April 13, 1932. The amount of capital stock was $15,000, being 100 shares of preferred of the par value of $100 per share, and 50 shares of common of equal par value. The articles stated that ninety per cent of the capital stock had been subscribed for and paid in cash and property ($1500 in cash and $11,900 in property, consisting of an agreement for a ninety-nine year lease on the tract of land described in the articles, which agreement was valued at $10,000, and the balance of the $11,900 consisting of four automobiles and miscellaneous items of personal property).

The Secretary of State of Missouri, on April 19, 1932, issued a certificate of incorporation to Sylvan Beach, Inc., which stated that "said association has on the date hereof become a body corporate duly organized under the name of Sylvan Beach, Inc., located at Kirkwood, and is entitled to all the rights and privileges granted to Manufacturing and Business Corporations under the laws of this State for a term of perpetual years * * *." The Secretary of State, on May 10, 1932, issued to Sylvan Beach, Inc., a certificate of authority to commence business, stating that it had complied with the requirements of law. The certificate of incorporation granted by the State has not been revoked. Sylvan Beach, Inc., has functioned as a corporation since the certificate was issued, and all parties to this proceeding are shown to have dealt with it as such.

expenses of the business promptly, and by July 30, 1938, had, out of the profits of the business, applied $4,000 upon the debtor's note to the bank. Nothing had been paid upon the notes to other creditors. The trustees employed Louis W. Peters as manager of the business until the spring of 1937, when they discharged him and procured another manager. Peters and his son Ralph were operating the restaurant upon the premises, which restaurant they owned or claimed to own and which they continued to operate during the time the trustees were in possession and control of the business of the debtor.

On July 30, 1938, the debtor filed a petition for reorganization under Section 77B of the Bankruptcy Act.[2] In the petition, which was verified by Louis W. Peters, the debtor's president, it was stated that the debtor was engaged in the public amusement business; that it had assets, consisting of the leasehold and the improvements thereon, of the approximate value of $50,000; that the debtor was indebted in the amount of about $28,000 and that sublessees had erected improvements upon the leasehold of the reasonable value of $25,000; that the debtor had been handicapped by lack of working capital; that about $13,000 of its indebtedness was secured by a deed of trust to Koch and Dalton, as trustees; that they were threatening foreclosure and were applying the income of the debtor "to the balance due the said Farmers-Merchants Bank of Fenton, of which they are officers, without protecting the requirements of the aforesaid leasehold under which the debtor company is holding the aforesaid property and to the danger and irreparable injury and loss of the total investment of said debtor company."

The petition for reorganization was, on July 30, 1938, approved by the court as properly filed, and Louis W. Peters was appointed temporary trustee, with power to operate the business. The order appointing Peters required Koch and Dalton, trustees under the deed of trust, to deliver to him as temporary trustee the property of the debtor, together with the books of account, securities, moneys, etc. The order enjoined Koch and Dalton from interfering with the operation of the debtor's estate by Peters as temporary trustee. The order directed the temporary trustee to notify creditors and stockholders of a hearing to be held on August 30, 1938, to determine whether the appointment of the temporary trustee should be made permanent or terminated.

The record does not disclose what, if anything, took place at the hearing on August 30, 1938, but Peters continued to act as temporary trustee. On September 30, 1938, the court authorized him to pay $1250 rent due October 1, 1938, out of $1,988.84 which he represented that he had on hand. On January 16, 1939, he was authorized to issue certificates of indebtedness to borrow $1500 to pay rent and taxes. On March 24, 1939, the Wiemeyers moved the court for possession of their property because of a default in the payment of rent due January 1, 1939. On October 23, 1939, Peters was authorized to issue certificates of indebtedness in order to borrow $2500 to pay rent and taxes. On April 24, 1940, Peters was authorized to issue certificates in order to borrow $600 for repairs. On November 4, 1940, Peters procured authority to borrow $3,000 to pay rent and taxes. On May 14, 1941, he obtained authority to borrow $600 to pay out "a concessionaire" and for other purposes.[3]

On March 29, 1940, Koch and Dalton, trustees, filed a motion to dismiss the reorganization proceeding on the ground that

---

[2] The filing of the petition was first authorized at a meeting of the Board of Directors of the debtor on May 5, 1938. Louis W. Peters, P. M. Perkinson, Ralph L. Peters, and C. Lew Gallant voted in favor. A. L. Petersen, A. H. Peters and William F. Faisst voted against it. At a directors' meeting held on July 20, 1938, at which all directors were present except A. L. Petersen, it was unanimously voted that the action of the Board at its meeting on May 5, 1938, be ratified, and the officers of the company were instructed to file the petition.

Section 77B of the Bankruptcy Act was,

on September 22, 1938, superseded by Chapter X of the Bankruptcy Act, which, by § 276, sub. c(1), thereof, 11 U.S.C.A. § 676, sub. c(1), became applicable to this proceeding. See Bankers Securities Corp. v. Ritz Carlton Restaurant & Hotel Co., 3 Cir., 99 F.2d 51, 52, 53.

[3] The orders authorizing the temporary trustee to issue certificates of indebtedness stated "that said certificates should take priority in payment over existing obligations, debts, encumbrances and liens of the said Sylvan Beach, Incorporated, debtor, * * *."

the court lacked jurisdiction. They stated in their motion the facts relative to the deed of trust of May 31, 1935, and the circumstances under which it was given, and alleged that they were in possession of the debtor's property and business on July 30, 1938, at the time the debtor filed its petition for reorganization. Their motion showed that at that time the debtor had neither the possession nor right to possession of any of the property covered by the deed of trust, and that the debtor had not been engaged in any business since March, 1935. Koch and Dalton, trustees, submitted their motion upon the pleadings. On August 5, 1940, the District Court denied the motion and also denied a pending petition of Frank S. Wiemeyer and wife for possession of their property, the rent being again in default. The court, in its order denying these motions, reserved jurisdiction "at some future date, to pass upon the question whether the appointment of temporary trustee be made permanent or be terminated." Koch and Dalton, trustees, appealed to this Court from the order denying their motion to dismiss the reorganization proceeding. In affirming the order appealed from, this Court ruled, in effect, that it did not appear from the pleadings as a matter of law that the deed of trust amounted to a conveyance for the benefit of creditors which would prevent the District Court from entertaining and approving a petition for reorganization. See Dalton v. Peters, 8 Cir., 119 F.2d 494.

On October 27, 1941, Koch and Dalton, trustees, filed a second motion to dismiss the reorganization proceeding, again stating in detail the facts surrounding the giving of the deed of trust, and asserting, in effect, that the reorganization proceeding was a fraud upon them, their beneficiaries and the court. They alleged that, since June 6, 1935, the debtor had been a mere corporate shell, without business and assets, and that it was wholly insolvent and was not subject to reorganization under the Bankruptcy Act. The relief prayed for in the motion was:

"(1) Either to dismiss this proceeding and to order Debtor and its President, L. W. Peters, as temporary trustee, to redeliver to movants the property, assets and business constituting the trust res of movants' trust as the same was, under force of order of this Court of July 28, 1938, delivered and surrendered by movants to Debtor and said Peters on or about the said date; or (2) to order and direct Debtor and said Peters to redeliver the said property, assets and business to movants as said trustees; or (3) to find that debtor has no equity in the said property and to order all the same to be delivered to movants as trustees for the beneficiaries of their trust, other than debtor, and free of any claim of debtor for any residue of recovery; and (4) in either alternative, to order Debtor and said Peters to account fully to movants for the said property, assets and business."

On October 30, 1941, Frank Wiemeyer and wife filed a petition for possession of their property on the ground that the rent was again in default to the extent of about $2,000. They asserted in the petition that the debtor's petition for reorganization had not been filed in good faith. The prayer of the Wiermeyers' petition was:

"Wherefore, the premises considered, your petitioners pray the Court for an order discharging the temporary trustee herein and dismissing its petition, thereby permitting these petitioners to enforce their rights under the terms of their lease or that the Court vacate the said restraining order as to these petitioners and grant these petitioners leave to proceed at law to regain possession of their property or direct the trustee to deliver the possession of said property to these petitioners and for such other orders as the Court may deem meet and proper."

On December 1, 1941, the temporary trustee filed a "plan of reorganization", the details of which need not be stated. On May 8, 1942, Koch and Dalton, trustees, filed objections to the plan, again asserting, in effect, that the debtor had perpetrated a fraud in filing its petition for reorganization and was wholly insolvent and was not a fit subject for reorganization. On May 23, 1942, they amended their objections by adding assertions that the debtor was not a corporation which under the laws of Missouri might engage in business, and that if it was a corporation it was without stockholders holding stock issued under the laws of Missouri.

The issues raised by the petition of the Wiemeyers for possession of their property, by the motion of Koch and Dalton, trustees, to dismiss the reorganization proceeding, by the plan of reorganization, and by the objections of Koch and Dalton, trustees, to the plan, came on for hearing on May 8,

1942. Frank Wiemeyer and wife appeared, as did also Koch and Dalton, trustees. The debtor was represented by its counsel. *There were no other appearances.* The hearing lasted for a number of days, and much testimony was taken. We shall not discuss the evidence in detail. It showed that, at the time of the hearing, the rent was in arrears to the extent of $4,400; that, when the petition for reorganization was filed, on July 30, 1938, the debtor had no property in its possession and no business; and that there had, in fact, been no justification or excuse for requiring Koch and Dalton, as trustees, to turn over to the debtor and its temporary trustee the property held by Koch and Dalton under the deed of trust. The evidence also indicated that the debtor probably had received nothing of susbtantial value in exchange for its capital stock, and that the stock had, in effect, been issued virtually without consideration, to Louis W. Peters, who had distributed it as he saw fit.

The District Court, on December 5, 1942, after making detailed findings of fact and conclusions of law, adjudged: (1) That the cause be terminated and dismissed as a cause for corporate reorganization, but that jurisdiction be retained "to adjudge and decree the equities between Sylvan Beach, Incorporated, and the persons doing business in that name, Kenneth Koch and Richard Dalton, as trustees, and Frank Wehmeyer and Ethel Wehmeyer, as lessors, and arising out of the institution and maintenance of this proceeding"; (2) that Sylvan Beach, Inc., "be held not to be a corporation authorized to do business in the State of Missouri or the subject of corporate reorganization under Section 77B of the National Bankruptcy Act or Chapter X of the Chandler Act, or to prosecute or defend any action in a Federal Court"; that its shares are void and that it has neither stockholders, directors nor officers; (3) that Sylvan Beach, Inc., "be held to be the business name in which C. Lew Gallant, L. W. Peters, Ralph L. Peters, A. H. Peters, P. M. Perkinson, A. L. Petersen, Bessie Brenneman, J. C. Moore, William Faisst, F. M. Brenneman and Harry Stockman, prior to March 12, 1935," conducted the business in St. Louis County, Missouri, and that they "took all the proceedings and actions and did all acts in issue appearing to have been taken or done in that name"; (4) that the purported directors and officers of Sylvan Beach, Inc., are "in fact, in law and in equity, the duly authorized agents and representatives in all matters in issue of the individuals named"; (5) that the motion of Koch and Dalton, trustees, be sustained; (6) that Koch and Dalton, as trustees, have and recover of Sylvan Beach, Inc., and "said co-partners" the sum of $26,435.74, and have and recover from it and them the trust property, assets and business conveyed by the deed of trust; (7) that the restaurant property and fixtures on the premises, operated by Ralph L. Peters, are a part of the trust estate of the Koch and Dalton trust; that an automobile held in the name of Louis W. Peters is a part of the trust estate, and that Koch and Dalton, trustees, have and recover both the restaurant and the automobile, and have and recover from Louis W. Peters, Ralph L. Peters and C. Lew Gallant $7,000 for the use and detention thereof; (8) that the petition of the Wiemeyers be granted; that they have and recover from Sylvan Beach, Inc., and said co-partners $9,400 ($6,900 in rent up to January, 1943, and $2,500 expenses of litigation), and that the lease be cancelled and possession of the property be awarded to the Wiemeyers; (9) that the contingent beneficial interest of Sylvan Beach, Inc., and of the co-partners in the trust estate has, "due to their wrongful acts and defaults," no value and is cancelled; (10) that Koch and Dalton, as trustees, pay to the attorney for the Wiemeyers the sum of $2,500 as fees and a like amount to their own counsel, for his services, out of the trust assets delivered to them; (11) that Sylvan Beach, Inc., and the "co-partners" pay and refund all costs and administration expenses of the proceeding; (12) that leave be given to the Wiemeyers and to Koch and Dalton, as trustees, to amend their pleadings to conform "to the issues tried, the proof, the findings and to this judgment and its effect";[4] (13) that the court reserve jurisdiction to take further proceedings and make further orders in aid of its "judgment"; (14) that a copy of the "findings and conclusions and of this judgment" be delivered within four days to each of the

---

[4] On January 4, 1943, Koch and Dalton filed an amendment to their "Motion to Dismiss Proceedings, or for Order and Restitution to Movants of Assets and Business; and for Accountings," to conform their pleading to the proof and to the judgment.

"co-partners". Several orders in aid of the "judgment" entered on December 5, 1942, were made shortly thereafter.

On December 15, 1942, Louis W. Peters, Ralph L. Peters, A. H. Peters, C. Lew Gallant and William Faisst filed a special appearance and motion to vacate the "judgment" against them, upon the ground that the court was without power, in a summary proceeding, to enter such a judgment, and that they had been denied due process of law in that the "judgment" had been entered without giving them either notice or a hearing. A. L. Petersen, on the same day, filed a similar appearance and motion. On December 23, 1942, the Pevely Dairy Company filed a motion that the "judgment" of December 5, 1942, be modified so as to provide for the payment to the Dairy Company of certificates of indebtedness issued to it by the temporary trustee under authority of the court. In its motion, the Dairy Company stated that it was the holder of three such certificates aggregating $1,000, which represented money loaned by it to the temporary trustee to cover expenses of administration, and that it was entitled to have provision made for the payment of these certificates out of the insolvent estate. The motion of Louis W. Peters and others to vacate the "judgment", the motion of A. L. Petersen to vacate the "judgment", and the motion of the Dairy Company to modify the "judgment", were heard together on December 23, 1942. It then appeared that Koch and Dalton, as trustees, had obtained under the "judgment", from the temporary trustee, approximately $6,-700 in cash, which apparently represented all of the liquid assets then remaining in the estate.

After hearing the motions to vacate and the motion to modify the "judgment", the court, on January 4, 1943, filed additional findings. It found that A. L. Petersen had been a purported stockholder and director of the debtor; that he knew of the conveyance of all of the debtor's property to Koch and Dalton, trustees; that he paid nothing for the stock of the debtor transferred to him by Louis W. Peters; and that Petersen had participated in initiating the fraudulent reorganization proceeding commenced on July 30, 1938. The court also found that Louis W. Peters, Ralph L. Peters, A. H. Peters, C. Lew Gallant, and William Faisst were in substantially the same situation as A. L. Petersen. With respect to the Pevely Dairy Company, the court found that it had made loans "to the purported temporary trustee evidenced by his purported Trustee's Certificates"; that a part of the consideration for the loans was an agreement that the products of the Dairy Company be sold on the premises of the debtor, to the exclusion of other dairy products; that the loans were made at a time when the motion of Koch and Dalton, trustees, to have the property in the hands of the temporary trustee restored to them was pending; that, of $6,000 loaned by the Dairy Company to the temporary trustee, $1,000 remained unpaid; that payment of it as an administration expense was adjudged to be paid by the persons found to be partners under the name Sylvan Beach, Inc., and that the court was "without jurisdiction to charge the res of Messrs. Koch's and Dalton's trust with payment of this loan, or to recapture, sequester and impound the res or any part thereof to that end, and in equity ought not to do so." In these additional findings, the court states:

"The court has not presumed, and does not presume, to determine one way or the other the question of the corporate existence of Sylvan Beach, Incorporated, but limits its consideration to starting at the point that the corporation, if a corporation, has not and never has had any valid shares issued and outstanding."

The motions to vacate and the motion to modify the "judgment" were denied. These appeals from the "judgment" followed.

It is of course obvious, from what has been said, that counsel who represented Koch and Dalton, as trustees, in the court below, misconceived the powers and functions of that court as a court of bankruptcy, and induced it to make findings and to enter judgments which cannot be sustained. We could, no doubt, reverse the "judgment" in its entirety and order the restoration of the status which existed at the time it was entered, but that would complicate the situation for the Wiemeyers, who were undoubtedly entitled to recover possession of their real estate.

■■■ We agree with the court below that the giving of the deed of trust and the delivery of the debtor's property and business to Koch and Dalton, as trustees, in 1935, constituted, in practical effect, a reorganization of the debtor and rendered the debtor an unfit subject for a subsequent corporate reorganization under Chapter X of the Bankruptcy Act. We also agree that the petition of the debtor for reorganization

filed July 30, 1938, presented a false picture of the debtor's situation and constituted a breach of faith, amounting to a fraud upon Koch and Dalton, as trustees, and upon the beneficiaries of their trust.[5] The only possible justification for the filing by the debtor of the petition for reorganization on July 30, 1938, was that the time when the deed of trust could be foreclosed was approaching and that the management of the business by Koch and Dalton, trustees, had been sufficiently successful to indicate that there was a possible equity for the debtor in the trust property. While those circumstances might perhaps have justified such a proceeding for the purpose of securing an extension of the time of foreclosure, they did not justify taking from Koch and Dalton, trustees, the assets and business and placing them in the hands of Louis W. Peters. The fact remains, however, that the court below approved the debtor's petition, appointed Louis W. Peters temporary trustee, authorized him to take over the assets and conduct the business, and compelled Koch and Dalton, as trustees, to deliver the property and business to Peters. This Court affirmed that action on the part of the lower court as being within its power on the face of the pleadings.

■■■ We are satisfied that the judgment of this Court in Dalton v. Peters, 8 Cir., 119 F.2d 494, is res judicata of nothing except the exact question of jurisdiction which was presented and decided. In Freeman on Judgments, 5th Ed., Vol. 2, § 740, pages 1561-1562, it is said: "A judgment on the pleadings is on the merits if it determines the merits of the controversy as distinguished from the merits of the pleadings. But such a judgment is not conclusive as to matters which could only be determined on evidence." See, also, 30 Am.Jur., Judgments, § 208, pages 944-945; Swift v. McPherson, 232 U.S. 51, 55, 56, 34 S.Ct. 239, 58 L.Ed. 499; Mayor and Aldermen of City of Vicksburg v. Henson, 231 U.S. 259, 269, 273, 34 S.Ct. 95, 58 L.Ed. 209; Dennison Mfg. Co. v. Scharf Tag, Label & Box Co., 6 Cir., 121 F. 313, 318. The decision of this Court in Dalton v. Peters could not in any event tie the hands of the lower court in the performance of its continuing duty to prevent Chapter X of the Bankruptcy Act from being used by a hopelessly insolvent corporation to defraud or harass creditors. See First National Bank v. Conway Road Estates Co., 8 Cir., 94 F.2d 736, 739; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237, 246. We are of the opinion, however, that the court below was not without jurisdiction, under Chapter X, to proceed with the administration of the business and property which it had taken over from Koch and Dalton, as trustees, upon the apparent assumption that the debtor had a substantial equity to protect.

■■■ We think it is unnecessary for this Court to decide whether the debtor was a corporation which could properly engage in business under the laws of Missouri, or whether its stockholders, as partners or otherwise, are liable to its creditors. The jurisdiction of the Federal Courts is not controlled by State law. Davis v. Ensign-Bickford Co., 8 Cir., 139 F.2d 624. Any corporation which could be adjudged a bankrupt can petition for reorganization under Chapter X of the Bankruptcy Act. See 11 U.S.C.A. § 506(3). "Corporations", as defined in § 1(8), Chapter I, of the Bankruptcy Act, 11 U.S.C.A. § 1(8), "include all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships and shall include partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association, joint-stock, companies, unincorporated companies and associations, and any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument." Section 1(23) of Chapter I of the Bankruptcy Act, 11 U.S.C.A. § 1(23) provides that "persons" shall include corporations except where otherwise specified. Section 4 sub. a of Chapter III of the Act, 11 U.S.C.A. § 22, sub. a, provides: "Any person, except a municipal, railroad, insurance, or banking corporation or a building and loan association, shall be entitled to the benefits of this Act as a voluntary bankrupt."

■ There is nothing in the record to support a finding that the debtor was not a corporation which could file a petition for reorganization under Chapter X of the Bankruptcy Act. It had a certificate of incorporation from the State of Missouri, and made contracts, paid taxes, and incurred indebtedness as a corporation. It

---

[5] Counsel who represent Sylvan Beach, Inc., on this appeal did not represent it prior to the entry of the judgment appealed from and did not participate in the proceedings below until after the judgment was entered.

was publicly and privately recognized as such. The Supreme Court of Missouri in Boatmen's Bank v. Gillespie, 209 Mo. 217, 108 S.W. 74, 86, said:

" * * * Moreover, whatever may be the rule in other jurisdictions, we understand the law in this state to be that a certificate of incorporation issued by the Secretary of State is a final determination of the corporation's right to do business as such, and that thereafter the state only, by a direct proceeding, can challenge its corporate existence or its right to do business as a corporation, even though fraud should be practiced upon the Secretary of State in obtaining the certificate. Nor, should the corporation or its incorporators fail to comply with the conditions or duties subsequent to the granting of the certificate, would that invalidate the incorporation or render the incorporators liable as partners or as individuals."

See, also, First National Bank of Deadwood v. Rockefeller, 195 Mo. 15, 93 S.W. 761, 767; Drake Hotel Co. v. Crane, 210 Mo.App. 452, 240 S.W. 859, 861; and A. W. Mendenhall Co. v. Booher, 226 Mo.App. 945, 48 S.W.2d 120, 122.

■ At the time the petition of the Wiemeyers to recover their real estate, and the motion of Koch and Dalton, trustees, to dismiss the reorganization proceeding and to recover the property covered by the deed of trust, were heard, the court below had power to determine whether the Wiemeyers were entitled to the return of their real estate and to the cancellation of their lease, and to decide whether the estate of the debtor had assets which belonged to Koch and Dalton, as trustees, and which should be delivered to them. The court also had power to determine whether the debtor could or could not be reorganized under the Bankruptcy Act, and whether the proceeding had been conducted in good faith or was a fraud upon the court and upon the creditors. Those matters were all related to the administration of the estate and were within the issues presented by the motions then pending. The court could not, however, in a summary proceeding, render personal judgments against the debtor and against its stockholders in favor of Koch and Dalton, trustees, and the Wiemeyers, or decide controversies not within the issues presented.

■ A court of bankruptcy is a court of equity within a limited field. It has, however, no plenary jurisdiction in equity. Smith v. Chase National Bank, 8 Cir., 84 F.2d 608, 614, 615; United States v. Killoren, 8 Cir., 119 F.2d 364, 366. It has jurisdiction to adjudicate controversies relating to property of which it has actual or constructive possession. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876. It has no jurisdiction to hear and determine controversies between adverse third parties which are not strictly and properly part of the proceedings in bankruptcy. Brumby v. Jones, 5 Cir., 141 F. 318, 320; Chauncey v. Dyke Bros., 8 Cir., 119 F. 1, 3; Brockett v. Winkle Terra Cotta Co., 8 Cir., 81 F.2d 949, 952; Smith v. Chase National Bank, 8 Cir., 84 F.2d 608, 615; Morrison v. Rockhill Imp. Co., 10 Cir., 91 F.2d 639, 642.

■ In the absence of (1) notice to a party of the claim made against him, and (2) of a hearing or an opportunity to be heard in opposition thereto, a judgment entered upon the claim is a nullity. Galpin v. Page, 85 U.S. 350, 18 Wall. 350, 368, 369, 21 L.Ed. 959; Windsor v. McVeigh, 93 U.S. 274, 277, 278, 23 L.Ed. 914; Coe v. Armour Fertilizer Works, 237 U.S. 413, 423, 35 S.Ct. 625, 59 L.Ed. 1027; Twining v. State of New Jersey, 211 U.S. 78, 110, 111, 29 S.Ct. 14, 53 L.Ed. 97; Ochoa v. Hernandez, 230 U.S. 139, 161, 33 S.Ct. 1033, 57 L.Ed. 1427; Postal Telegraph Cable Co. v. City of Newport, 247 U.S. 464, 476, 38 S.Ct. 566, 62 L.Ed. 1215; Truax v. Corrigan, 257 U.S. 312, 332, 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375; Gentry v. United States, 8 Cir., 101 F. 51; In re Rosser, 8 Cir., 101 F. 562, 567, 570; In re Noell, 8 Cir., 93 F.2d 5, 6, 7.

■ A court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings. Standard Oil Co. v. State of Missouri, 224 U.S. 270, 281, 34 S.Ct. 406, 56 L.Ed. 760, Ann.Cas.1913D, 936; Barnes v. Chicago, M. & St. P. R. Co., 122 U.S. 1, 14, 7 S.Ct. 1043, 30 L.Ed. 1128; Reynolds v. Stockton, 140 U.S. 254, 265, 266, 11 S.Ct. 773, 35 L.Ed. 464; Clark v. Arizona Mut. Savings & Loan Ass'n, D.C., 217 F. 640, 642-644; Gentry v. United States, 8 Cir., 101 F. 51. Unless all parties in interest are in court and have voluntarily litigated some issue not within the pleadings, the court can consider only the issues made by the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded. A party is no more entitled to recover upon

862

a claim not pleaded than he is to recover upon a claim pleaded but not proved.

■ The foregoing rules are all fundamental and state nothing more than the essentials of due process and of fair play. They assure to every person his day in court before judgment is pronounced against him. They cannot be circumvented by allowing amendments to pleadings to change a cause of action after judgment or by giving notice of the entry of judgment or by entertaining motions to vacate a judgment after it has been entered.

■ The money judgments in favor of the Wiemeyers and in favor of Koch and Dalton, trustees, were void for want of jurisdiction and want of due process. The judgment granting to the Wiemeyers possession of their real estate and cancelling the ninety-nine year lease should, we think, be sustained. It is true that the "judgment" dismissed, for want of jurisdiction, the proceeding as one for corporate reorganization, before granting the relief requested by the Wiemeyers in their petition, but, as we have pointed out, the court had jurisdiction to grant the Wiemeyer's petition for possession of their real estate and did grant it. So far as the motion of Koch and Dalton, trustees, for the recovery of the assets of their trust and the dismissal of the reorganization proceeding is concerned, we do not doubt that they are entitled to any residue of the insolvent estate remaining after the payment of claims (if any) superior to their claims. We think, however, that before the residue can be delivered to them, the claim of the appellant Pevely Dairy Company against the estate for money loaned to the temporary trustee and evidenced by the certificates of indebtedness issued under the authority of the court, must be heard and adjudicated.

■ We are also of the opinion that the court must, in terminating this reorganization proceeding, conform to § 236 (2) of the Bankruptcy Act, 11 U.S.C.A. § 636(2), which provides that if no plan is approved or accepted, the judge shall, "after hearing upon notice to the debtor, stockholders, creditors, indenture trustees, and such other persons as the judge may designate, enter an order either adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with pursuant to the provisions of this Act, or dismissing the proceeding under this chapter, as in the opinion of the judge may be in the interests of the creditors and stockholders." The Supreme Court of the United States has said that this statute "does not contemplate a liquidation in a Chapter X proceeding but a liquidation in ordinary bankruptcy or a dismissal outright." Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 621, 63 S.Ct. 807, 813.

The judgment appealed from, in so far as it restored to the Wiemeyers possession of their real estate and cancelled their lease with the debtor is affirmed. In every other respect the judgment is reversed. The appellants shall recover two-thirds of their costs on appeal in this Court. The case is remanded with directions for further proceedings in conformity with this opinion.